**UNITED STATES of America**

v.

**Carl M. REED, Appellant.**

**UNITED STATES of America**

v.

**Curtis HOSTON, Appellant.**

**Nos. 23044, 23661.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 25, 1971.

Decided March 9, 1973.

---

15. United States v. Benn, 155 U.S.App.D.C. ——, 476 F.2d 1127 (1972).

Marilyn Cohen, Washington, D. C., for appellant in No. 23,044. Paul J. Spiegelman, Washington, D. C. (appointed by this court) also argued for appellant. James L. Kurtz and Henry F. Harding, Washington, D. C. (both appointed by this court) were on the brief for appellant. Barbara Bowman and John Perazich, Washington, D. C., also entered appearances for appellant in No. 23,044.

Marilyn Cohen, Washington, D. C., for appellant in No. 23,661. Nathan L. Silberberg, Washington, D. C. (appointed by this court) also argued for appellant in No. 23,661.

Brian W. Shaughnessy, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty. at the time the brief was filed, John A. Terry and David C. Woll, Asst. U. S. Attys., were on the brief, for appellees. Roger C. Spaeder, Asst. U. S. Atty., also entered an appearance for appellee in No. 23,044.

Before BAZELON, Chief Judge, and WRIGHT, McGOWAN, TAMM, LEVENTHAL, ROBINSON, MacKINNON, ROBB and WILKEY, Circuit Judges, sitting en banc.

McGOWAN, Circuit Judge:

These two criminal appeals were consolidated with a third—No. 24,085, United States v. Coefield, 155 U.S.App.D.C. ——, 476 F.2d 1152, decided February 6, 1973,—for hearing and disposition by the court *en banc*. The reason for this grouping of the cases for *en banc* treat-

ment was that each involved a challenge to the imposition of an adult sentence as distinguished from commitment under the Federal Youth Corrections Act, 18 U.S.C. § 5005 et seq.; and the court thought it important to resolve definitively a recurring problem which has characterized the administration of that statute. The court has now spoken to this end in *Coefield*; and it remains to decide these two companion appeals in the light of the principles enunciated in that decision. As in *Coefield,* we affirm the convictions in each case,[1] vacate the sentences, and remand for further proceedings consistent with this opinion.

I

*No. 23,044*

■ ■ Appellant Reed was initially indicted in 1968 under D.C.Code provisions for armed robbery, robbery, assault with a dangerous weapon, and carrying a dangerous weapon, all in connection with the holdup of a tavern. On September 9, 1969, he pleaded guilty to the robbery count. On the basis of a pre-sentence report which noted that Reed was eighteen years old, had no prior criminal record, was "at the crossroads of life and what is done to him at this particular time will most likely determine which way he is going to go in the future," the court committed him to treatment and supervision in a youth facility under Section 5010(b) of the Youth Corrections Act.

On November 1, 1969, appellant's *pro se* motion to withdraw his guilty plea was granted. He was then tried under the original indictment before a jury, with a different judge from the one who had taken his guilty plea. He was convicted of armed robbery, assault with a dangerous weapon, and carrying a dangerous weapon. Despite his counsel's plea for leniency in light of his youth and record, and despite a second presentence report recommending treatment in a youth institution, the court, without comment, sentenced appellant to from three to nine years in a penal institution. The entire substantive portion of the sentencing proceedings is as follows:

[DEFENSE ATTORNEY:] . . . I would like to say on behalf of Mr. Reed he is a very young man. Apparently he had no involvements with the law as a juvenile and it is rather surprising and rather somewhat shocking that he should get involved in this type of a case. I did have some contact or some information respecting his employment while he was out on bond and it would seem to be good. Apparently some other people think somewhat highly of him. This particular case unfortunately, as Your Honor knows, he did enter a plea and for what reason he withdrew that plea, I don't know. I have an idea perhaps that maybe upon learning that the fellow that was arrested with him, the juvenile that was arrested with him, got over in Juvenile

---

1. Appellant Reed presented character witnesses in his defense at trial, and argues on appeal that reversible error flowed from the court's failure to instruct the jury on the significance to be attached to such evidence. There was no defense request for such an instruction and no objection to its omission, but, pretermitting the question of whether the point is properly cognizable on appeal, we find that no substantial rights were affected in the light of the strong proofs of guilt adduced by the prosecution and the insubstantial character of the character testimony. Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Neither do we find any abuse of

discretion, in the circumstances shown by this record, in the trial court's refusal to interrupt the trial indefinitely in order to enable appellant to try to find a witness. The indications were that the testimony of such witness would have been cumulative at best, and, at worst, contradictory of that given by appellant. It also seemed quite unlikely that the witness could be found.

Appellant Hoston's only challenge to his conviction, as distinct from his sentence, is a claim that the trial judge intervened too actively in the questioning of witnesses. Our reading of the transcript establishes that the point is wholly lacking in merit.

Court might have motivated him to think that maybe he could get something similar. All in all I ask Your Honor to be as lenient as you feel that you can under the circumstances.

THE COURT: Mr. Reed, do you have anything to say before the Court imposes sentence in your case?

THE DEFENDANT: No, I don't.

THE COURT: In Criminal Case 545-68 the Court sentences the defendant Carl M. Reed to be incarcerated for a period of not less than three nor more than nine years in a penal institution to be designated by the Attorney General or his authorized representative. You have ten days within which to note an appeal.

[DEFENSE ATTORNEY:] Thank you, Your Honor.

*No. 23,661*

Appellant Hoston was, on July 30, 1969, found guilty by a jury of armed robbery, assault with a dangerous weapon, and carrying a dangerous weapon— charges growing out of a robbery of an A & P Store.[2] Following his conviction, appellant was on October 22, 1969, committed by the trial judge, under Section 5010(e) of the Youth Corrections Act, for a 60-day period of observation, study, and report. Earlier, in the month after his conviction, appellant had sought and received authority from the District Court for a psychological evaluation by Mr. Harold Grant, Staff Psychologist of the Offender Rehabilitation Project.

Appellant came before the trial judge for sentencing on December 12, 1969. Those proceedings in their entirety are as follows:

THE COURT: Mr. (Defense Counsel), I arranged for my chambers to make available to you the report from the Youth Center. Have you had a chance to see it?

[DEFENSE COUNSEL]: I have, Your Honor.

THE COURT: I have also before me, in addition to that, the Offender Rehabilitation Report and a psychological study by Grant, as well as the presentence report. I have been over these matters with some care.

Is there anything you wish to say to me before sentence is imposed?

[DEFENSE COUNSEL]: No, your Honor, just to stress that once again this was the Defendant's first serious offense and that my understanding is that he did cooperate fully with the authorities in getting together these reports.

THE COURT: What is the status of his other armed robbery case?

[DEFENSE COUNSEL]: I understand, Your Honor, from my conversation with his counsel in that case, that that is being set down for trial and will be tried in the near future.

---

2. One alleged accomplice in this crime, Winestock, pleaded guilty to robbery; and another, Shade, was tried with appellant and found guilty of armed robbery and assault with a dangerous weapon. Shade's appeal to this court raised no sentencing issue, and his conviction was affirmed (No. 23,660, decided January 11, 1971).

When Winestock came before the court for sentencing, the following colloquy occurred:

THE COURT: Mr. Winestock, do you have anything you want to say to me?

THE DEFENDANT: Yes, Your Honor. I would appreciate if I was sent back to the Youth Center. They have a lot there to offer me, you know.

THE COURT: Well, I have, as you know, had you at the Youth Center for an evaluation study under 5010(e). You need some help, but you are making good progress and you are working at it.

The Court is going to sentence you to eight years under 5010(c) of the Youth Corrections Act. Now I want to make sure you understand the nature of that sentence, Mr. Winestock. That allows them to hold you a longer period than 5010(b), if it was necessary, but it still is indeterminate. It depends on the progress you make. You work at it. I think you are making progress. That is the sentence of the Court.

THE COURT: Mr. Hoston, is there anything you wish to say to the Court?

DEFENDANT HOSTON: No, sir.

THE COURT: Well, I have studied this material, Mr. Hoston, with some care. I do not think you should go to the Youth Center. I am going to give you an adult sentence: Three to sixteen years on Counts 1, 4 and 7; three to nine years on Counts 3, 6, 9, 10, 11 and 13; one year on Count 16; all of these sentences to run concurrently.

Now I imagine that you will be held here pending your other trial at the local jail.

That is the sentence of the Court.

[DEFENSE COUNSEL]: Thank you, Your Honor.

The presentence report that was before the court showed appellant as having no juvenile arrests or convictions; two minor adult arrests but no convictions; and one arrest for carrying a dangerous weapon shown as "no disposition." He was reported as having a light narcotics habit; and the recommendation was as follows:

"This individual brings to the Court a prior community record free of law violation and adequate community circumstances, completion of high school graduation requirements, minimal employment experience and mild narcotics addition. He is perceived as an individual possessed of community and personal resources, given proper guidance and support, if and only if an abrupt attitude change should occur within the very near future."

The 5010(e) report included a full psychological examination and a proposed course of treatment for appellant. Its conclusion was stated in these terms:

"The staff is of the opinion that Mr. Curtis Hoston should be sentenced under the Youth Corrections Act, 5010b, and returned to the Youth Center for training and treatment."

This court is not informed as to the nature of the psychological study prepared by Mr. Grant of the Offender Rehabilitation Project.

II

In *Coefield* this court *en banc* described the comprehensive character of the Youth Corrections Act, and the patent purpose it exhibited on the part of Congress to do everything possible to save youthful offenders from lives of hopeless criminality. It noted that this purpose came into its sharpest focus in the admonition of Section 5010(d) that the sentencing court may impose an adult sentence only "[I]f the court shall find that the youth offender will not derive benefit from treatment under subsection (b) or (c) . . ." We concluded, building upon this court's earlier decisions in United States v. Waters, 141 U.S.App.D.C. 289, 437 F.2d 722 (1970), and United States v. Ward, 147 U.S.App.D.C. 149, 454 F.2d 992 (1971), that this requisite statutory finding may not be "left to implication," but must appear explicitly in the sentencing record as an essential condition precedent to the legality of an adult sentence.

From these premises *Coefield* went on to say that it would not be enough for the sentencing court simply to track the statutory language.[3] The basis for its

---

3. The unqualified character of that language has unquestionably created difficulties for the sentencing courts. Its literalness might be taken to require YCA disposition in virtually every case, since a conscientious judge, who has wrestled with all the information available to him and who regretfully inclines to the view that an adult sentence is the better course, may feel that he cannot honestly make a finding that the defendant would derive *no* conceivable benefit of any kind from the other alternative. We noted in *Coefield*, however, that this language occurs in the context of a statute in which Congress has manifested no intention to foreclose absolutely the exercise of discretion by the sentencing judge. And in *Coefield*, recognizing the infinite variety of factors which may frequently look in opposite

finding must appear in a statement of the reasons why it has decided against a Youth Corrections Act commitment and in favor of adult punishment. We were at some pains in *Coefield* to recognize that that election remains within the discretionary range of the judge's sentencing function but, as this court said in *Waters*, it is a discretion "circumscribed by the findings of fact in the individual case which the District Judge is required to make. . . ."

We also were careful to note in *Coefield* that, in respect of the statement of the reasons giving rise to the finding, ". . . we are not seeking to elicit any litany or prescribed formula"; and we enumerated what we conceived to be the essential elements of the exercise of the sentencing function when a defendant eligible by reason of his age alone for possible disposition under the Youth Corrections Act, stands before the bar of the court. Given conscious and conscientious attention by the sentencing judge to these elements, we saw no reason to envisage a "large number of appeals calling for review of sentences which call for consideration of the Youth Corrections Act."

■ The awesome and difficult task of sentencing continues to be vested in the one man who is best circumstanced to discharge it wisely, that is to say, the trial judge. The Youth Corrections Act does not change that, nor does it contemplate wholesale appellate intrusion into that process. What Congress has done, out of its urgent concern for saving the young while there is still time, is to require of the sentencing court in one limited but highly important area of sentencing the exposure on the record of the factors which informed and shaped the particular exercise of its discretion. An appellate court can only be concerned with the rationality of those factors in relation to the Congressional objectives. Where that rationality is present and visible, its function is at an end.

### III

■ The sentencing circumstances in the case of appellant Reed are very like those involved in *Coefield* in the sense that the sentencing court made no reference whatsoever to the Youth Corrections Act alternative. This was despite the fact that there were before the court two presentence reports which were favorable to Reed's rehabilitation prospects.[4] Indeed, the second and later of such reports expressly recommended disposition of Reed as a youth offender. It is true that defense counsel in his plea for leniency made no specific reference to the Youth Corrections alternative, but it does not appear from the record whether he had been given access to the presentence report or knew what its recommendation was.

We cannot tell from the record in the case before us whether the trial court had the Youth Corrections Act in mind at all, much less what its reasons, if any, were for electing to impose an adult sentence in preference to a YCA commitment. There is, in any event, a complete absence—even in the bare statutory language—of the finding required by the Act as a condition precedent to giving Reed an adult sentence. Our analysis in *Coefield*, therefore, makes imperative the vacation of the sentence in No. 23,044, and the remand of the case for resentencing in which due heed will be taken of that analysis.

### IV

■ In the case of appellant Hoston, there was no want of awareness of the Youth Corrections Act. The sentencing court promptly upon conviction invoked Section 5010(e) and made a 60-day com-

---

directions in the same case, we disclaimed any purpose "to spell out all the grounds that might form a basis for an affirmative 'no benefit' finding."

4. The presentence report before the court in *Coefield* was not favorable in its con-

clusion. Despite that fact, we felt obliged to vacate the adult sentence since the court said nothing as to the Youth Corrections Act.

mitment for observation and study. When that was complete and the report received, the court immediately made it available to defense counsel. When the matter came on for hearing, the court referred to its careful study of that report, the presentence report, and the psychological study made by the Offender Rehabilitation Project. The court's conclusion was, however, stated simply to be that "I do not think you (Hoston) should go to the Youth Center."

There is every reason to believe from this record that the court did give serious consideration to the possibility of a YCA commitment. It did not in terms, however, purport to make the statutory finding required by Section 5010(d), except as the unamplified statement of what it had decided to do may be claimed to be such a finding. There is not available to us from this record any indication of the reasons which impelled the court to its conclusion.

This is not to say that there were no such reasons,[5] but only that we have no way of knowing what they were. In *Coefield* we said that where a sentencing court acts to get a 5010(e) report, and, after considering it in the light of such other relevant data as may be before him, follows its recommendation, a further recital of reasons may well be unnecessary. But we said also that ". . . [where] the judge imposes a sentence contrary to the recommendation in a report following a referral under section 5010(e), the need for more detailed statement of reasons is more obvious."

We think this latter principle laid down in *Coefield* is determinative here. The handling in this instance of the Youth Corrections Act alternative was a model of correct and enlightened procedure up to the point of its uninformative termination. That alone inevitably gave rise to an appeal point founded on the requirements of the statute, and one which we are in no position to dispose of on this record. Accordingly, appellant Hoston, although under appreciably different circumstances from those which characterized the sentencing of appellant Reed, is entitled to the same disposition of his appeal.

In Nos. 23,044 and 23,661, the convictions are affirmed, the sentences vacated, and the cases remanded for new sentencing proceedings consistent herewith.

It is so ordered.

ROBB, Circuit Judge (concurring):

Without questioning the propriety of the sentences imposed by the district judges I acquiesce in the remand of these cases.

MacKINNON, Circuit Judge (concurring in part and dissenting in part):

For reasons set forth in my dissent in No. 24,085—United States v. Coefield, 155 U.S.App.D.C. ——, 476 F.2d 1152, decided February 6, 1973, I concur in the disposition of Reed's case (No. 23,044) and dissent from the disposition of Hoston's case (No. 23,661).

---

5. At the time of sentencing the court inquired as to "the status of his (Hoston's) other armed robbery case," and was told by defense counsel that it was to be tried in the near future. The reference presumably is to an indictment returned on June 10, 1969, charging an offense to have been committed on April 14, 1969 —at a time when appellant Hoston was out on bond awaiting trial in the case on appeal before us. Hoston went to trial on this latter charge on May 5, 1971. He was convicted by a jury and was sentenced by a trial judge different from the one who presided in the case before us to an adult sentence to be served concurrently with the sentence imposed in this case. An appeal of that conviction to this court resulted in an affirmance (No. 71–1860, decided September 28, 1972). In that appeal no issue was raised with respect to the sentence, perhaps because at the time Hoston was convicted in that case he was ineligible for YCA commitment by reason of age.