**UNITED STATES of America**

v.

**Anthony A. RILEY, Appellant.**

**Nos. 72–1227, 72–1228.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 22, 1973.

Decided July 3, 1973.

2. 42 U.S.C. § 2000e–2(e) (1970).

Paul R. Hoeber, San Francisco, Cal., of the bar of the Supreme Court of California, pro hac vice, by special leave with whom William Gray Schaffer, Washington, D. C., was on the brief, for appellant. Jonathan Axelrod, Washington, D. C., also entered an appearance for appellant.

David M. Bullock, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Brian W. Shaughnessy, Asst. U. S. Attys., were on the brief, for appellee. Harry J. McCarthy, Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, and WRIGHT and MacKINNON, Circuit Judges.

BAZELON, Chief Judge:

On November 23, 1971, appellant pled guilty to armed robbery and attempted armed robbery, arising out of two separate incidents at the same dry cleaning establishment. On March 10, 1972, he was sentenced to two to ten years' imprisonment on the first charge and one to three years' imprisonment on the second, the sentences to run concurrently.

He appealed, alleging that the District Court improperly denied him Youth Corrections Act sentencing pursuant to 18 U.S.C. § 5010 (1970).[1] This court ordered motions for summary reversal and summary affirmance held in abeyance pending decisions by the court *en banc* in United States v. Coefield,[2] United States v. Reed,[3] and United States v. Hoston.[4]

Appellant also moved for a stay of the adult sentence, and for interim commitment to the Lorton, Virginia, Youth Corrections facility. At oral argument on that motion, the Government advised the court that an expanded youth facility would shortly become available at Lorton, and that this information had not been before the District Judge at sentencing. We accordingly remanded the record "to afford the District Court an opportunity to reconsider its sentence, if it is so disposed," and stated:

We do not know what weight, if any, was given the overcrowded condition of the Lorton youth facility by the District Court at the time of sentencing.[5]

The District Court declined to alter the adult sentence, and this court subsequently declined to rule summarily on the merits or to stay the sentence.

Decisions have now issued in Coefield, Reed and Hoston, and this case has been

1. Appellant, 17 at the time of the offenses and 18 at the time of the pleas, was an eligible "youth offender" under the Act. *See* 18 U.S.C. § 5006(e) (1970) ; United States v. Coefield, No. 24,085, 155 U.S. App.D.C. 205 at 211, 476 F.2d 1152, at 1158 (1972).

2. No. 24,085, 155 U.S.App.D.C. 205, 476 F.2d 1152 (1973).

3. 155 U.S.App.D.C. 198, 476 F.2d 1145, (1973).

4. 155 U.S.App.D.C. 198, 476 F.2d 1145 (1973).

5. United States v. Riley, Nos. 72–1227, 72–1228 (D.C.Cir., order filed May 5, 1972).

argued. We vacate the adult sentence and remand for resentencing.

## I

Section 5010(d) of the Youth Corrections Act states that an otherwise eligible offender may be sentenced as an adult "[i]f the court shall find that the youth offender will not derive benefit from treatment under [this Act]."[6] In Coefield we held that this finding must be explicit, and that it must be supported by a statement of "reasons from which it can be determined that [the sentencing decision] is consistent with the purposes of the Act."[7]

We also held that when the District Court has ordered a temporary commitment for observation and study pursuant to section 5010(e), and has followed that study's recommendations, "additional reasons need not be stated."[8] But this

is merely an adoption of the reasons stated in the section 5010(e) report.[9] It does not obviate the need for exposure of the factors which informed and shaped the sentencing decision, nor relieve this court of responsibility to determine whether those reasons, from whatever source, demonstrate a present and visible rationality.[10]

## II

In this case the District Court ordered a section 5010(e) study and followed its recommendation that appellant be denied Youth Corrections Act sentencing. Since the District Judge did not state additional reasons,[11] we must turn to the section 5010(e) report, which the Judge ordered sealed and made a part of the record, to see whether *Coefield's* requirements have been met.[12]

6. 18 U.S.C. § 5010(d) (1970) (emphasis added).

7. United States v. Coefield, No. 24,085, 155 U.S.App.D.C. 205, at 212, 476 F.2d 1152 at 1159 (1973).

8. *Id.* at 210, 476 F.2d at 1157.

9. *See* United States v. Phillips, 156 U.S. App.D.C. 217, 479 F.2d 1200 (1973).

10. *See* United States v. Tillman, No. 71–1352, at 4 (D.C.Cir. June 6, 1973); United States v. Coefield, No. 24,085, 155 U.S. App.D.C. 205, at 210, 476 F.2d 1152 at 1157 (1973).

11. At the original sentencing the trial judge heard oral argument, and questioned the defendant about the disposition of his earlier arrests. The judge then pointed out that the § 5010(e) report had been adverse, quoted its language, mentioned an "adverse" presentence report, and imposed sentence. No independent *reasons* were stated.

12. United States v. Riley, Cr. Nos. 1510–71, 1670–71 (D.D.C., order filed March 13, 1972).
The trial judge also ordered included two presentence reports and a "letter from the D.C.Parole Board signed by H. Albion Ferrell, Vice Chairman, D.C. Parole Board," which is discussed below. Presentence reports are not given the same elevated status by our decisions as section 5010(e) reports. Hence, a judge

cannot, by his silence, adopt "reasons" expressed in them as a basis for denial of Youth Corrections treatment.
Moreover, it is doubtful that a contrary result would flow from such an adoption in this case. The first, and more comprehensive, report concluded:
Despite the Board of Parole's recommendation to the contrary, it is respectfully recommended that the defendant be sentenced under Section 5010b of the Federal Youth Corrections Act.
The second report was prepared on February 24, 1972, at the order of the trial judge who continued sentencing from February 18 to March 3 for this purpose. It stated that the trial judge had requested "that the probation office update the [February 3, 1972 report] with the information concerning the instant offense." The February 3 report had, however, been prepared after the November 23 guilty pleas.
The second report recited an additional interview with appellant on February 22 in the U.S. District Court cellblock, found him "hostile," and substantially reiterated the statements of the D.C. Board of Parole contained in the § 5010(e) report. This case thus turns on the sufficiency of the § 5010(e) report under any rule concerning presentence reports.
It is nonetheless disturbing to *contrast* the brief *February 24* "supplemental" presentence report with the data reported in the § 5010(e) report. The psychologist described Mr. Riley as a "very lonely

One justification for adult sentencing appeared in each section 5010(e) recommendation available to the sentencing judge: the Lorton facility had no room. We may dispose of this at the outset. *Tillman* held "There is no legal authority for diverting otherwise eligible youths to adult institutions due solely to lack of space." Rather, we said, "the courts should respond . . . by ordering that facilities adequate to handle all but the 'exceptional case' be provided." [13]

■ Moreover, the overcrowding cited existed only at the Lorton Youth Center. An affidavit placed before the sentencing judge by defense counsel indicated that there was ample space at other Youth Corrections facilities. There is no authority for refusing Youth Corrections Act sentencing to a District of Columbia code offender on the sole ground that the Lorton facility is full. Pursuant to sections 5010(b) and (c), all Youth Corrections Act sentences are merely "to the custody of the Attorney General." The only consequence of the fact that a youth offender violated a law applicable exclusively to the District of Columbia is that his treatment and rehabilitation may be financed from the appropriation for the District of Columbia.[14]

But, if we exclude the consideration of overcrowding, the record is devoid of reasons demonstrating the required " 'present and visible' rationality" of an adult sentence. The Lorton psychologist, whose findings and analysis formed the base of the pyramid of recommendations that reached the sentencing judge, openly stated his belief that Riley "could benefit from the programs of this institution." [15] The three member Lorton Classification Committee rendered a substantially similar report two days later:

[A] commitment to the Youth Center would be most appropriate under normal conditions. However, because of

individual" who shows "much anxiety over his relationships with other people." He reported that appellant was suffering role confusion because of his father's early death, and concluded:

However, on a more positive side, we find an individual who places emphasis upon seeing the world as others see it. He has some value system although it is not as yet integrated into his personality structure. In his attempts to make his environment safe, he does things in an orderly manner and is capable of functioning satisfactorily in a structured situation. He is aware of his problems and desires some type of corrective treatment.

13. No. 71–1352, at 7 (D.C.Cir. June 6, 1973).

14. *See* 18 U.S.C. § 5025(a) (1970). The Commissioner of the District of Columbia is authorized to provide facilities for local offenders, *see id.,* or he may "contract with the Director of the Bureau of Prisons for their treatment and rehabilitation." *See id.* A youth placed in the facility for local offenders remains under the supervision of the Commissioner. *See id.* § 5025(c).

15. He recommended, however, an indeterminate adult sentence under 18 U.S.C.

§ 4208(a)(2) (1970). This recommendation was either irrelevant or the product of an impermissible attempt to balance the values of the available sentencing alternatives without regard to the presumptions established by the Act. *See* United States v. Tillman, No. 71–1352, at 5 (D.C.Cir. June 6, 1973).

In an affidavit filed with the District Court before sentencing, Riley's attorney presented the results of interviews with two members of the Lorton Classification Committee. He reported:

They stated that at the time they prepared the report for this Court that it was their recommendation that Mr. Riley be sentenced pursuant to [§ 4208(a)(2)] because this provides for parole at any time "and is like a Youth Act commitment." They further stated that since making this recommendation that it has come to their attention that [this section] is not applicable to the D.C. offenses, and that it has been their practice to in lieu of that recommendation to recommend commitment at a Federal Youth Center [*sic*].

Riley's attorney also reported that they said this is a "standard recommendation that is made in all cases until the current overcrowding at Lorton ceases."

the current overcrowded space and facilities at the Lorton Youth Center, meaningful treatment cannot be provided.

When these reports reached the District of Columbia Board of Parole, it too recommended the denial of a Youth Corrections Act sentence because of the overcrowding at Lorton. Drawing on the reports of the psychologist and the Classification Committee, its statement at first blush adds additional elements:

> Mr. Riley has a pattern of aggressive robbery type of offenses, with weapons involved. He has been on probation and involved in juvenile correctional programs but such measures have not reversed the trend. He is well versed in current asocial activity and appears quite sophisticated in spite of his age. The Board does not see this case as being a priority type of Youth Center case.[16]

The District Judge read these statements, with the exception of the last sentence quoted, into the record at sentencing and again on the remand. They are at least addressed to the issue that is relevant on Youth Corrections Act sentencing— the defendant's rehabilitative potential. But they are fatally flawed here by two defects. First, even if these statements are relevant to the proper inquiry, they do not provide reasons supporting the required no-benefit finding. As we observed in *Tillman*, a prior record, particularly of juvenile offenses, does not compel a finding that an offender would not benefit from Youth Corrections treatment. "While an offender's prior record is clearly pertinent, its mere recitation, without a showing of how it evidences his incapacity to benefit from rehabilitative treatment, is not an adequate reason."[17] Nor does prior probation or experience in "correctional programs," whose rehabilitative programs are unarticulated, alone demonstrate that appellant would not benefit from the rehabilitative treatment provided under the Act. We find no statement of reasons connecting these ambiguous statements with a conclusion that appellant would not benefit.

Second, it is doubtful, especially in light of later developments in the sentencing process, that the authors of these comments believed that they would support the no-benefit finding that the trial judge made. Riley's trial counsel, showing commendable dedication, communicated with the Federal Bureau of Prisons, and was informed that space existed at Youth Corrections facilities other than Lorton.[18] He conveyed this

---

16. The record on which this statement rests reflects that appellant had been arrested 9 times for petit larceny, housebreaking, robbery, attempted burglary, and disorderly conduct. Five of these arrests occurred by the time appellant was 12 years old, and the last when he was 16. The record indicated that he was placed on probation at the age of 12 and, beginning that year, "committed to Department of Public Welfare" three times. No indication of the nature of this commitment, or whether any rehabilitative treatment was involved, appears in the materials that were before the sentencing judge and included in this record.

Appellant has seven older siblings and one younger. His mother is in her fifties, cannot work because she is suffering from a painful, progressive, and incurable bone disease, and she lives on a social security pension. Riley has never known a father, and the Classification and Parole Officer stated:

> Overall [I] received the impression that the subject's mother was a very concerned and interested parent limited by her own resources and unable to overcome the hold that the subject's environment had on him.

Finally, that officer reported that appellant began using heroin in 1970, when he was 16, to relieve his anxieties concerning his environment and his relations with other people.

17. No. 71–1352, at 16 (D.C.Cir. June 6, 1973).

18. The results of the communications were subsequently included in an affidavit filed with the trial court. They included numerical breakdowns of the population and capacity of a number of youth facilities, and showed that some were hardly more than half full.

information to the Vice Chairman of the District of Columbia Board of Parole. The Vice Chairman responded by writing the District Court a most candid letter for the Board. In pertinent part, it read:

> A careful study of [the Board's] recommendation indicates, in the last sentence of the . . . paragraph [quoted above], "The Board does not see this case as being a priority type of Youth Center case" that under normal circumstances if there was space available at the Lorton Youth Center Mr. Riley would have been recommended for such a commitment.
>
> . . . Certainly the Board would see [placement in a Bureau of Prison youth facility] as being superior to placement in an adult facility.

Thus, not only did the Board fail to articulate reasons, but it saw none sufficient to support a no-benefit finding.

■■ In *Coefield* we said that a trial judge may adopt the reasons in a section 5010(e) report as his own when he follows that report. But when the report provides no reasons cognizable under the Act, neither reliance on the report itself nor a simple oral recitation of the factual statements made in that report will suffice. Moreover, even when reasons are supplied, if the report finds the sum total of permissible reasons inadequate to support a finding of no benefit, it is incumbent on the sentencing judge to articulate his reasons for reaching a

contrary conclusion. Absent such an explanation, the offender must be sentenced under the Act.

■ Since the section 5010(e) report does not support the imposition of an adult sentence, and since the trial judge added no reasons of his own, we must vacate the sentence and remand for resentencing in compliance with *Coefield*.[19] As we stated in *Tillman*, nothing precludes the sentencing judge from ordering a new section 5010(e) report to aid him in resentencing.[20]

So ordered.

WRIGHT, Circuit Judge (concurring):

In United States v. Reed and Hoston, 155 U.S.App.D.C. 198, 476 F.2d 1145 (1973), this court *en banc* articulated the appellate test for the sufficiency of the reasons given for denying Youth Corrections Act treatment. The court stated that "[a]n appellate court can only be concerned with the rationality of those [reasons] in relation to the Congressional objectives. Where that rationality is present and visible, its function is at an end." 155 U.S.App.D.C. at 203, 476 F.2d at 1150. Here the decision of the District Court[1] and the recommendation in the Section 5010(e) report were significantly influenced by the overcrowding at the Lorton YCA facility. Overcrowding at the Lorton YCA facility is an irrational reason for not imposing a YCA sentence, particularly since other YCA facilities available to the Attorney Gen-

---

19. On the remand the only additional information provided was a letter from the probation office indicating that Lorton was still overcrowded and that the Bureau of Prisons felt that appellant "should remain in the District of Columbia." The letter concluded:

> In the absence of available alternatives, I see nothing to be gained at this point by Your Honor's reconsidering your sentence.

20. No. 71–1352, at 21 (D.C.Cir. June 6, 1973).

1. On May 5, 1973, we remanded this case "to afford the District Court an oppor-

tunity to reconsider its sentence, if it is so disposed," noting the overcrowded condition of the Lorton YCA facility and the fact that "[w]e are now advised by Government counsel that an expanded youth facility serving the District of Columbia will shortly become available, and that this information was not before the District Court at the time sentence was imposed." On remand the sentencing judge refused to amend the sentence, stating, *inter alia*, "that additional facilities at the Lorton Youth Center will not be available for several months at the earliest."

eral are hardly more than half populated.[2] In any event, now that the overcrowding at the Lorton facility is apparently ended, I agree that this case should be remanded for reconsideration of the sentence in the light of a current Section 5010(e) report.

MacKINNON, Circuit Judge (dissenting):

In zeal to interject impermissibly its own philosophy into the sentencing process, the panel majority relies upon its assumption that the record in this case did not justify the trial court to adjudge an adult sentence. The panel majority reaches this conclusion by a combination of routes. It (a) ignores appellant's criminal record, (b) misstates some of the findings of responsible officials and omits other findings, (c) distorts the important portion of an official finding by fragmenting and separating that which it considers favorable from the more important conclusion which is contrary to its position, and then ends up (d) by second guessing the psychologist and others charged with the duty of recommending appropriate treatment for convicted criminals. In short, the panel which has never even seen the appellant, much less interviewed him, sets its judgment over that of practically all those experts who have had contact with him, and then usurps the sentencing function of the trial judge who has a constitutional right and duty to make his own decision in adjudging a proper sentence.

(a) *Ignoring Appellant's Criminal Record*

The panel opinion nowhere alludes to the extensive criminal record of appellant. He was born on July 1, 1953.

His juvenile and adult record in the presentence report indicates:

| | |
|---|---|
| 5/24/65 | Petit larceny |
| 12/13/65 | Petit larceny |
| 1/ 3/66 | Petit larceny |
| 5/ 5/66 | Housebreaking |
| 6/29/66 | Disorderly |
| 8/17/67 | Tampering with an auto and petit larceny |
| 10/17/67 | Robbery |
| 12/13/68 | Attempted burglary II |
| 2/25/69 | Petit larceny |
| 2/ 5/70 | Robbery (force & violence) |
| 6/30/70 | Robbery (holdup) (armed) |
| 3/30/71 | Armed robbery (revolver) |
| 6/ 1/71 | Attempted robbery |

This record speaks for itself. Concerning the offense committed on June 1, 1971, appellant's classification study dated December 30, 1971 contains the following statement:

The subject has admitted his guilt in the instant offenses but denied using a gun. He stated that no weapon was necessary as he knew very well how to get into a cash register and had *often robbed stores* by simply distracting the employee and quickly taking money from the cash register. He stated that he committed the robberies because he needed money for drugs. (Emphasis added.)

The Presentence Report of February 3, 1972 also states:

[Appellant] explains that he is a heroin addict who has developed a two spoon per day habit. He was therefore forced to steal approximately $60.00 per day[1] to avoid withdrawal symptoms.

This admission indicates he may have committed many more offenses than those for which he was apprehended and convicted.

---

2. *See* note 18 in Judge Bazelon's opinion. At the time of the sentence and the remand in this case, District of Columbia Code YCA offenders, because of overcrowded conditions at the Lorton YCA facility, were being sent to federal YCA facilities in other areas pursuant to an agreement between the Federal Bureau of Prisons and the District Court.

1. This indicates appellant must steal $21,900 a year to feed his habit. If this amount were stolen in cash it would be a sizeable sum, but if it were obtained from stolen property disposed of at the ordinary prices which stolen property brings, the amount of property stolen could easily reach $100,000 a year.

To complete appellant's record, the following should be added:

> Subject also reported a 3 year commitment on January, 1971, to the juvenile facility, but to which he was never sent, because he made good an *escape* from the court and was not apprehended until arrested on the instant offenses. (Emphasis added.)

So escape should be added to the admitted offenses. The failure of the panel opinion to consider the criminal record of the person they are dealing with ignores a highly significant factor that was properly considered by the sentencing judge. The sentencing judge also had before him the following recommendation of the Chief Probation Officer:

May 15, 1972

MEMORANDUM TO THE HONORABLE JOHN LEWIS SMITH, JR.

Re: RILEY, Anthony
CC #1510–71 and
CC #1670–71

SUBJECT: Order of the Court of Appeals

The Court of Appeals has remanded the record in the above styled case to afford Your Honor "an opportunity to reconsider" your sentence, if you are so disposed. This action appears to be predicated on the basis of information given to the Court of Appeals that "an expanded youth facility serving the District of Columbia will shortly become available."

I have been in touch with Mr. Robert Whitaker, Superintendent of the Lorton Youth Center. He advises me that additional facilities will not be available for several months at the earliest. Considering the number of youthful offenders at the jail or in the Lorton complex, the outlook is not good. According to Mr. Whitaker, they could practically fill a new facility if they had one, from these youthful offenders.

As Your Honor may recall, and before you imposed the sentences which you did in these cases, I had sent complete material to the Bureau of Prisons to see whether they would designate a Federal youth institution for Mr. Riley. The Bureau of Prisons reported back that they believed he should remain in the District of Columbia. They also referred to Mr. Riley's failure in the past to respond to youth type programs, to his apparent sophistication in spite of his age, and to the aggressive nature of his offenses.[2] In the absence of available alternatives, I see nothing to be gained at this point by Your Honor's reconsidering your sentence.

Respectfully submitted,
George W. Howard
Chief U. S. Probation Officer

GWH: dmc

(b) *Misstatements and Omissions of Official Findings*

The majority opinion states that, excluding overcrowding:

> [T]he record is devoid of reasons demonstrating the required "present and visible rationality" of an adult sentence.

*Supra* at 3. It is apparent to an unbiased observer that the mere statement of appellant's extensive criminal record, heroin addiction, escape and failure of prior correctional attempts implicitly demonstrates many valid reasons for a trial court to adjudge an adult sentence, particularly when so recommended by the proper officials, as is the case here.

It is unnecessary to deal with the claim that the reason appellant did not receive a YCA sentence was because there was overcrowding of YCA facilities at Lorton because no such reason entered into *the final sentence* which is all that is before this panel. Some of

---

2. The plain import of this letter is that appellant was not eligible for any "youth institution," and should thus be kept in the District of Columbia.

the references on this point in the majority opinion confuse the circumstances of the initial sentence with the sentence re-imposed after remand. The concurring opinion states that the sentence and the § 5010(e) recommendation "were significantly influenced by the overcrowding at the Lorton YCA facility," but counsel for appellant at oral argument in this court *denied* any such conclusion when he stated:

> It is not perfectly clear but it appears from that memorandum[3] on remand that he [the sentencing judge] *was not relying on the overcrowded conditions at Lorton.* (Emphasis added.)

Moreover, conditions in the YCA facilities at Lorton or elsewhere are immaterial because the court found in its May 17, 1972 Memorandum (*see* n. 3), "*that the defendant would not benefit from a sentence under the Youth Corrections Act.*" (Emphasis added.) In reliance on note 18 of Judge Bazelon's opinion, Judge Wright states that there were "other YCA facilities available to the Attorney General [that] are hardly more than half populated," but this is also irrelevant to this case because appellant was not eligible for such YCA facilities. Even if he was eligible there is no assertion or proof in this record that the facilities referred to were available for D.C.Code offenders of crimes (non-federal)—such as Riley. In any event Judge Wright has merely

raised a red herring because, as stated above, the reason the adult sentence was adjudged was *not* because of overcrowding at the Lorton YCA facilities.

As to additional reasons in the record for imposing an adult sentence, the following data must be considered:

(1) In its report of January 18, 1972, the Board of Parole recommended to the sentencing judge:

> Following conviction for Armed Robbery and Attempted Robbery, the above named youth was sentenced by your Honor under Section 5010e of the Youth Corrections Act for a period of observation and study. The Classification Committee at the Youth Center has recommended that Mr. Riley should be sentenced under Title 18 United States Code Section 4208(a)(2).
>
> *The Board of Parole recommends an adult commitment. The option to use provisions of Title 18 United States Code Section 4208(a)(2) is not seen as being available in light of type of offenses in issue.*
>
> Mr. Riley has a pattern of aggressive robbery type of offenses, with weapons involved. He has been on probation and involved in juvenile correctional programs but such measures have not reversed the trend. He is well versed in current asocial activity and appears quite sophisticated in spite of age.

---

3. MEMORANDUM ON REMAND

The record in this case was remanded to the trial judge to afford an opportunity to reconsider the sentence, if it is so disposed.

Attention is directed to the memorandum of the Chief Probation Officer (copy attached), dated May 15, 1972, indicating that additional facilities at the Lorton Youth Center will not be available for several months at the earliest. At the time of sentence the Court quoted an excerpt from the recommendation of the Board of Parole as follows:

" . . . Mr. Riley has a pattern of aggressive robbery type of offenses, with weapons involved. He has been on probation and involved in juvenile correc-

tional programs but such measures have not reversed the trend. He is well versed in current asocial activity and appears quite sophisticated in spite of age."

After carefully considering the defendant's background, the serious nature of the offenses involved, and the record, *the Court concluded that the defendant would not benefit from a sentence under the Youth Corrections Act.* Having further reviewed the entire file, the trial Court is not disposed to amend the sentence.

/s/ John Lewis Smith, Jr.

United States District Judge

May 17, 1972

(Emphasis added.)

The Board does not see this case as being a priority type of Youth Center case.

Foregoing is submitted to the Court for its adjudication of this case together with a copy of the letter from the Superintendent of the Youth Center and a copy of the Classification Study. (Emphasis added.)

The Clinical Psychologist on December 28, 1971 had stated:

It is felt that Mr. Riley could benefit from additional education, vocational training, and psychotherapy. Although it is believed that he could benefit from the programs of this institution, it is recommended that he be sentenced under the provisions of Section 4208(a) 2.

However, the Youth Services Division on January 14, 1972 had recommended:

Recommended Adult Commitment. Option to use provisions of 18 U.S.C. § 4208(a)(2) not seen as being available in light of type of offenses in issue. Young man has a pattern of aggressive robbery type offenses, with weapons involved. Has been on probation and involved in juvenile correctional programs but such instances have not reversed the trend. Well versed in current anti social activity and appears quite sophisticated in spite of age. Do not see this as being a priority type Youth Center case.

This was practically the same conclusion as that of the Board of Parole on January 18, 1972, quoted above.

(2) The Presentence Report of Feb. 3, 1972 rendered on the offense of "Attempted Robbery 22 DCC 2902"

Despite the Board of Parole's recommendation to the contrary . . . recommended that the defendant be sentenced under Section 5010b of the Federal Youth Corrections Act.

(3) But the Presentence Report rendered 21 days later on February 24, 1972 on the greater offense of "Armed Robbery (22 DCC 3202)" contained the following:

In this officer's opinion, Riley is a very sophisticated, angry young man, *who would not benefit from the Youth Corrections Act* program because of his tremendous hostility toward authority and the system in general. His inability to receive any benefit from numerous attempts at juvenile rehabilitation should also be noted. He was on juvenile probation at the time of his involvement in the instant offenses. The juvenile record also reflects a previous period of probation, as well as three commitments to juvenile institutions. *Therefore, it is respectfully recommended that Riley receive a medium period of incarceration under the regular adult sentencing statute.* (Emphasis added.)

It is easy to see why a Presentence Report might recommend YCA for *attempted* robbery but recommend an adult sentence for the more serious offense of *"Armed* Robbery." In any event the final report of February 24, 1972 takes all prior offenses into consideration and it is the *final report* that is of most importance to the sentence here adjudged. It recommends "a medium period of incarceration under the *regular adult sentencing statute"* and sets forth a full statement of adequate reasons. The trial court adjudged a sentence in accordance with this recommendation and nothing more is needed. As a matter of fact, the sentencing court was not required to follow the recommendation but it chose to do so and the sentence adjudged is unassailable.

### (c) Coloring the Record

A good example of how the majority opinion tailors the record to give the strongest possible slant to the facts in an attempt to support its ultimate position is its treatment of a statement by a Lorton psychologist, one of the staff which produces material for the ultimate decision by the Board.

The Clinical Psychologist at the conclusion of his classification study of appellant of December 28, 1971 stated:

> It is felt that Mr. Riley could benefit from additional education, vocational training, and psychotherapy. Although it is believed that he could benefit from the programs of this institution, it is recommended that he be sentenced under the provisions of Section 4208(a) 2.

Now the majority opinion does not present or face up to this short statement in its true light but instead separates that which it considers to be favorable to its conclusion from which is unfavorable and presents it in two separated parts. Thus at page 6 the majority opinion states:

> The Lorton psychologist whose findings and analysis formed the base of the pyramid of recommendations that reached the sentencing judge, openly stated his belief that Riley *"could benefit from the programs of this institution."* (Emphasis added.)

It then relegates to footnote 15 the actual recommendation of the psychologist as follows: "He *recommended,* however, *an indeterminate adult sentence* under 18 U.S.C. § 4208(a)(2) (1970)" (emphasis added) and then argues the irrelevancy of this recommendation.

Thus the panel opinion unfairly emphasizes the portion it considers favorable to its conclusion by placing such *portion* in the body of the opinion, and burying in a footnote the more important part of the statement which constitutes the recommendation for adult sentencing with which the panel opinion disagrees. This manner of presenting the findings of the Clinical Psychologist does not fairly present his sentencing recommendation.

(d) The remainder of the panel opinion consists primarily of an attempt to psychoanalyze the reasons and philosophy of the sentencing judge and the sentencing recommendations and those participating in the studies leading up to the sentencing recommendations. No authority is needed for the statement that such action by an appellate court exceeds its jurisdiction.

(e) *The Ubiquitous No-Benefit Requirement*

The majority opinion further attempts to justify its remand for resentencing by claiming that the record does not disclose "the required *no-benefit* finding" (emphasis added), *i.e.,* that appellant would not receive benefit from the Youth Corrections Act program. I find this conclusion to be in error on the facts, and the statement of the standard to be applied to be an incorrect construction of the Act. The second Presentence Report, the significant recommendation of which the majority report fails to quote,[4] stated, *inter alia:*

> [Appellant] is a very sophisticated, angry young man, *who would not benefit from the Youth Corrections Act program* because of his tremendous hostility toward authority and the system in general. His *inability to receive any benefit* from numerous attempts at juvenile rehabilitation should also be noted.

Presentence Report of February 24, 1972 (emphasis added).

The italicized finding is an adequate basis for the adult sentence imposed by the court and I am at a loss to understand the failure of the majority opinion to note, quote or refer to the text of this significant finding.[5] Moreover, as previously stated, both appellant and the Government agree that the sentencing court did not adjudge its May 17, 1972 sentence upon the overcrowding at the Lorton Youth Center. And the court

---

4. *See* p. 1129 n. 12 of the majority opinion.

5. Note 15 in Judge Bazelon's opinion refers to the recommendation for an indeterminate adult sentence under 18 U.S.C. § 4208(a)(2), but completely omits here or elsewhere the finding of the Presentence Report that *"Appellant . . . would not benefit from the Youth Corrections Act program because,* etc. . . . "* (Emphasis added.)

was fully entitled and required to come to its own conclusion as to a correct sentence regardless of the recommendation of staff personnel.[6]

The sentencing judge had an opportunity personally to observe the appellant and is in a preferred position to determine an appropriate sentence for the offender and for the crime. To my mind he has properly discharged that duty and I would affirm his sentence. A proper deference to the recognized judgment and discretion of the trial court requires such affirmance.

It should also be noted that those statements in the panel opinion which state that a finding is required that a youth offender will "not derive benefit from treatment *under [this Act]*" before an adult sentence may be imposed are loose statements and oversimplification of the statute that fail to consider significant provisions of the Youth Corrections Act and fail to give it a

common sense construction. Actually the statute provides:

> If the court shall find that the youth offender will not derive benefit from treatment *under subsection (b) or (c)*, then the court *may* sentence the youth offender under any other applicable penalty provision.

18 U.S.C. § 5010(d) (emphasis added). It is significant that the statute does *not* refer to "treatment *under [this Act]*" as the panel opinion states, but to "treatment *under subsection (b) or (c)*." (Emphasis added.) Noting this difference is important because subsections (b) and (c) [7] in 'turn refer to other sections of the Act *which indicate that the objective of the "treatment" is discharge from supervision (release) as provided in § 5017(c) or (d)* [8] *of the Act.* This "discharge" (release) is the objective "benefit" referred to by the statute and it is the *eligibility of offenders for this*

---

6. Blockburger v. United States, 284 U.S. 299, 305, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) noted that the extent of punishment was for the sentencing court "with whose judgment there is no warrant for interference on our part." And in United States v. Bryant, 143 U.S.App.D.C. 53, 55, 442 F.2d 775, 777 (1971), we said, "[i]f the sentence is within the latitude granted by statute and is imposed in a procedurally correct manner, the court has a well-nigh unreviewable discretion." Our comment in Wilson v. United States, 118 U.S.App.D.C. 319, 321, 335 F.2d 982, 984 (1963) was to the same effect: "We recognize, of course, that the imposition of sentence is in the sound discretion of the District Judge."

7. 18 U.S.C. § 5010(b) and (c) provide:
 (b) If the court shall find that a convicted person *is a youth offender,* and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter until discharged by the Division as provided in section 5017(c) of this chapter; or
 (c) If the court shall find that the youth offender may not be able to derive maximum benefit from treatment by the

Division prior to the expiration of six years from the date of conviction it may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter for any further period that may be authorized by law for the offense or offenses of which he stands convicted or until discharged by the Division as provided in section 5017(d) of this chapter.

8. 18 U.S.C. § 5017(c) and (d) provide:
 (c) A youth offender committed under section 5010(b) of this chapter shall be released conditionally under supervision on or before the expiration of four years from the date of his conviction and shall be discharged unconditionally on or before six years from the date of his conviction.
 (d) A youth offender committed under secion 5010(c) of this chapter shall be released conditionally under supervision not later than two years before the expiration of the term imposed by the court. He may be discharged unconditionally at the expiration of not less than one year from the date of his conditional release. He shall be discharged unconditionally on or before the expiration of the maximum sentence imposed, computed uninterruptedly from the date of conviction.

*benefit* that is the significant objective of any sentence to treatment and supervision under the Act.

When these cross references in § 5010(b) and (c) and § 5017(c) and (d) are noted it becomes clear that the congressional intent manifest from a reading of the entire Act is to provide for the treatment and supervision of youth offenders who "show promise of becoming useful citizens," [9] *and are considered to be rehabilitable.* In all common sense 18 U.S.C. § 5010(d) says, *if the trial court has no good reason to believe that the offender will benefit from treatment and supervision available under subsection (c) or (d) that he should be sentenced under some other procedure that will benefit him.* And certainly the benefit to an individual that Congress was talking about was not the benefit that any person would get solely from incarceration, or the limited benefit that would only be obtainable by a non-rehabilitable offender at the high cost of severe damage to the YCA treatment and supervision of others who do show promise of rehabilitation. Thus, a sentencing court is *not required by the statute* to adjudge a sentence under the Youth Corrections Act unless it can demonstrate that the offender will derive "no benefit" from YCA treatment and supervision. Instead the true meaning of the provision is that the court may refuse to impose a YCA sentence in those cases where it does not consider that the offender is a likely candidate for rehabilitation within the maximum sentencing periods authorized by the Act. It would be an absurd construction to hold that a youth offender must be sentenced under the YCA on a mere failure to demonstrate that he would derive "no benefit" from such sentence because practically every youth offender could by some stretch of the imagination be found to receive "some" benefit from such treatment and supervision, *even Jack the Ripper.*[10] The plain intent of the Act is to authorize the sentencing of those youth offenders who are considered to be rehabilitable and who will not further corrupt and poison the minds of the youth offenders with whom they may be confined who are promising candidates for rehabilitation.

It is clear that the staff and the court considered that appellant did not meet these basic, simple and reasonable requirements and hence he should be segregated with offenders of his own class. To confine such "sophisticated . . . angry" offenders, involving as they do a greater security risk, with youth offenders who do qualify for YCA treatment and supervision is to compel the conversion of a D.C. YCA facility in many respects into a D.C. penitentiary. That is the natural consequence of the recent YCA sentencing cases of this court on the D.C. youth correction facilities.[11] It is obvious to anyone that if the Court of Appeals requires our trial courts to commit a lot of roughnecks, incorrigibles and sophisticated criminals to youth

9. 2 U.S.Code Cong. & Ad.News 3983, 81st Cong., 2d Sess. (1950) (Senate and House Reports are substantially identical).

10. To the extent that our decision in United States v. Coefield, 155 U.S.App.D.C. 205, 476 F.2d 1152 (*en banc*, 1973), and companion cases, are occasionally applied to *compel* a YCA sentence, they contradict the YCA statute which is *completely discretionary.* And it is a completely absurd construction of a statute to compel the mixture of hardened unrehabilitable criminals with unsophisticated youth offenders who have every promise of becoming useful citizens, just because they are within the same 18 to 22 age bracket. Eventually *Coefield* and the unsound sentencing practices it compels will have to give way to a decision recognizing the sounder sentencing practice that Congress intended or to a new statute more precisely compelling such result. We cannot continue to herd hardened criminals with records such as appellant's with eligible youth offenders. To do so harms both the eligible offender and the ineligible offender because neither gets the treatment and supervision he requires.

11. The population at the D.C. Youth Center increased from 1,331 in fiscal year 1969 to 2,898 in fiscal year 1972, an increase of 117% in three years. Summary Report, District of Columbia Department of Corrections 1967–1972 at 51.

correction facilities, it is impossible to run a proper youth facility program. Such judicial destruction of the program Congress intended injures the rehabilitable youths the most. It deprives the YCA authorities of the "flexibility" which Congress intended to be one of the "cardinal principles" [12] to be available to the authorities supervising the treatment and supervision of eligible youth offenders. It also deprives the hardened offender of proper treatment. Individuals who do not meet the basic eligibility requirements of being rehabilitable by the YCA process may also poison the whole youth correction system before, because of misconduct, etc., they are eventually transferred to the adult institution where they should have been placed at the outset. I accordingly dissent.

12. U.S.Code Cong. & Ad.News, *supra* note 9, at 3987.