**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**David Mitchell JARRATT, Defendant-
Appellant.**

**No. 72–1685.**

United States Court of Appeals,
Ninth Circuit.

Dec. 20, 1972.

Rehearing Denied Jan. 19, 1973.

Jerome Fishkin (argued), of Brown, Dearman & Smith, San Francisco, Cal., for defendant-appellant.

Joseph Reeves, Asst. U. S. Atty. (argued), F. Steele Langford, Robert E. Carey, Jr., Asst. U. S. Atty., James L. Browning, U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before CHAMBERS and CHOY, Circuit Judges, and BYRNE, Sr.* District Judge.

---

* Honorable William M. Byrne, Sr., United States Senior District Judge, Central District of California, sitting by designation.

WILLIAM M. BYRNE, District Judge:

Jarratt was convicted of refusing to submit for induction into the Armed Forces, a violation of 50 U.S.C. App. § 462. On this appeal, he urges that his conviction be reversed because of various alleged procedural and substantive errors by both his local draft board and the Armed Forces Examining and Entrance Station (the AFEES) which determined that he was physically qualified for induction. In the alternative, he urges that his case be remanded for re-sentencing because of an alleged error by the district court relating to his sentence and the Youth Corrections Act, 18 U.S.C. § 5005 et seq.

Jarratt registered with his local board on February 6, 1969, and was granted a student deferment shortly thereafter. After that deferment expired, the board reclassified him as I–A on August 11, 1970, and notified him of his new classification and appeal rights. On September 30, 1970, the board ordered him to report for his pre-induction physical on October 15, 1970. On that date, he reported as ordered and was transported to the AFEES where he filled out a DD Form 89 (Report of Medical History). On that form, he marked the appropriate spaces indicating that he was presently suffering or had suffered from several medical conditions. In addition, he wrote the following entries in longhand: "Can't work around dust" and "Broncitis (sic) in '68 and '70." Then, he was given a "complete medical examination" which included an Army physician's review of the claims he had made on the DD Form 89. After this examination, the Army medical personnel at the AFEES recorded their findings on a DD Form 88 (Record of Medical Examination), determined that Jarratt was physically qualified for induction, and advised him that he should present documentary medical data to his local board if he desired further consideration of some unverified claims which he had raised.

On October 26, 1970, the board received notice from the AFEES that Jarratt had been "found fully qualified for induction." On the same date, the board received a letter from a doctor which stated, in part, that:

"Mr. Jarratt has been under my care since birth. Over the years he has been subject to recurrent Acute Bronchitis episodes. The last attack was in April, 1970, Temp. 103. Chest findings were quite typical of Bronchitis. Approximately 3 weeks were required for clearing of chest. He was out of school for two weeks.

\* \* \* \* \* \*

"He has had episodes of Allergic Rhinitis and allergic conjunctivits (sic), usually in the month of May. Antihistamines have been prescribed for these allergic problems.

"He has never had a thorough check up for his allergy."

Two weeks later, the board forwarded this letter together with Jarratt's pre-induction physical papers to the AFEES for reevaluation on a "papers only" basis.

The Army medical personnel at the AFEES reviewed these documents on November 19, 1970, and determined that there was no reason to change Jarratt's status from that of being physically qualified for induction. During this review, they placed a rubber-stamped entry of "19 Nov 1970—Reviewed and considered in registrant's physical profile [referring to his DD Form 88]" on the doctor's letter. After being notified of this determination, on December 8, 1970, the board mailed Jarratt a DD Form 62 (Statement of Acceptability) informing him that he was acceptable for induction.

One and one-half months later, the board sent Jarratt his induction notice which ordered him to report for induction on February 10, 1971. On that date, he reported as ordered and underwent a "physical inspection" at the AFEES. Again, he was determined to be physically qualified for induction and a handwritten entry of "Clear chest—

2/10/71" was made on his DD Form 88. Immediately thereafter, he refused to submit for induction.

Subsequently, Jarratt was indicted and tried, after waiving trial by jury, in the district court. At his trial, the only evidence produced was his selective service file. After conviction but prior to sentencing, his attorney pointed out that Jarratt was under the age of twenty-two years and requested that the court place him on probation pursuant to § 5010(a) of the Youth Corrections Act. While the court did in fact place him on two (or three) years probation on the condition that he perform two years of alternative service of national importance, it specifically refused to allow the record to indicate that he was being sentenced under the Act.

■ Jarratt's initial contention is that his local board committed error by failing to reclassify him as I–Y[1] after receiving his doctor's letter. He cites United States v. Baray, 445 F.2d 949, 954–955 (C.A. 9, 1971) as authority for his contention. However, his reliance upon *Baray* is misplaced. In that case, this court held that the registrant was entitled to a reclassification for the reason that the AFEES had already determined that he was physically *un*qualified for induction on two prior occasions. In this case, at the time the board received his doctor's letter, Jarratt had been determined to be physically qualified for induction by the AFEES. Therefore, the board was under no obligation to automatically reclassify him as I–Y.

■ Next, Jarratt claims procedural error because his doctor's letter was not "independently reviewed" by the members of his local board. He alleges that the letter was forwarded by the board's clerk to the AFEES without any review by the board members and that the

AFEES' determination that he was still physically qualified for induction despite the letter was adopted by the board without any review by its members. However, since Jarratt's selective service file does not conclusively show whether or not his board did in fact independently review the letter and his attorney did not raise this factual issue at trial, this issue is not properly before us on appeal. United States v. Greene, 456 F.2d 256, 257 (C.A.9, 1972); United States v. Currier, 453 F.2d 1242 (C.A. 9, 1972); United States v. Kember, 437 F.2d 534, 537 (C.A.9, 1970); Morales v. United States, 373 F.2d 527 (C.A.9, 1967).

■ Jarratt further contends that the AFEES committed error by placing the rubber-stamped entry of "Reviewed and considered in registrant's physical profile" on his doctor's letter. He argues that the entry was used to negate a physical finding and therefore violated Army Regulation 601–270 § 4–22(11)(b) which states:

"The use of rubber stamps to record *physical findings*, test results, and measurements *on the Standard Form 88* is not authorized." [Emphasis supplied].

This contention is totally without merit. The above regulation is not applicable because the rubber-stamped entry was placed on the doctor's letter rather than on Jarratt's DD Form 88. In addition, the regulation provides:

". . . They [rubber stamps] may, if properly applied, be utilized to record *administrative type entries* when this procedure will facilitate processing . . . ." [Emphasis supplied].

The entry "Reviewed and considered in registrant's physical profile" is an ad-

---

1. Jarratt claims I–Y status based upon 32 C.F.R. § 1622.7 (before being amended on December 9, 1971) which afforded such a classification to a registrant who

". . . is not eligible for a lower class, and would be classified as I–A . . . but for the fact that

he is found under applicable physical . . . standards to be not currently qualified for service in the Armed Forces and who would be qualified for such service in time of war or national emergency declared by Congress."

ministrative-type entry rather than a physical finding.

We have considered all of the issues raised in the briefs. Those issues and arguments relating to the local board and the AFEES which we have not discussed are deemed to be without merit.

Jarratt's final contention is that the district court committed error by denying his request that his record indicate that he was being placed on probation under § 5010(a) of the Youth Corrections Act. Section 5010 of the Act [2] furnishes the district court with three alternative methods for sentencing a "youth offender." It may either place him on probation pursuant to paragraph (a), sentence him to the custody of the Attorney General pursuant to paragraphs (b) or (c), or sentence him as an adult pursuant to paragraph (d) *after* finding that he will not benefit from being sentenced to the custody of the Attorney General. Cherry v. United States, 299 F.2d 325, 326 (C.A. 9, 1962).

 While § 5010 may be interpreted in such a manner that paragraph (a) pre-empts all sentencing of youth offenders who are placed on probation, we reject this interpretation because it unnecessarily fetters the discretion of the district court in sentencing. Instead, we interpret § 5010 as permitting district courts to place youth offenders on probation as adults under paragraph (d).

When Congress enacted the Act, it intended that the district courts would be provided with additional flexibility rather than be restricted in sentencing youth offenders. This intent is apparent from the report of the Senate Committee on the Judiciary which favored the Act and stated:

> *"While this bill [the Act] would not deprive the court of any of its present functions as to sentencing,* it provides that, upon conviction, the court may place the youth offender on probation, proceed under the Juvenile Delinquency Act, or sentence under any applicable law relating to the offense."* [3] [Emphasis supplied].

In a similar vein, the report from the House Committee on the Judiciary favored the Act and stated:

> "The proposed legislation [the Act] is designed to make available for the *discretionary* use of the Federal judges a system for the sentencing

2. § 5010. *Sentence.*

 (a) If the court is of the opinion that the youth offender does not need commitment, it may suspend the imposition or execution of sentence and place the youth offender on probation.

 (b) If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter until discharged by the Division as provided in section 5017(c) of this chapter; or

 (c) If the court shall find that the youth offender may not be able to derive maximum benefit from treatment by the Division prior to the expiration of six years from the date of conviction it may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the At-

torney General for treatment and supervision pursuant to this chapter for any further period that may be authorized by law for the offense or offenses of which he stands convicted or until discharged by the Division as provided in section 5017 (d) of this chapter.

 (d) If the court shall find that the youth offender will not derive benefit from treatment under subsection (b) or (c), then the court may sentence the youth offender under any other applicable penalty provision.

 (e) If the court desires additional information as to whether a youth offender will derive benefit from treatment under subsections (b) or (c) it may order that he be committed to the custody of the Attorney General for observation and study at an appropriate classification center or agency. Within sixty days from the date of the order, or such additional period as the court may grant, the Division shall report to the court its findings.

3. S.Rep.No.1180, 81st Cong., 1st Sess. 1 (1949).

and treatment of [youth offenders] . . . ." [4] [Emphasis supplied].

■ In this case, since Jarratt was twenty-one years old at the time of his conviction, he was a "youth offender." [5] Although the court did not specifically state that paragraph (d) of § 5010 was its statutory authority for the sentence which it imposed upon Jarratt, it implied such an intention by stating that it intended to sentence him as an "adult". The court's stated intention to sentence him as an adult was an implicit finding that Jarratt would not derive benefit from treatment under paragraphs (b) or (c). Cf. United States v. Waters, 141 U.S.App.D.C. 289, 437 F.2d 722, 724 (1970). However, since we are remanding the case for resentencing for the reasons discussed *infra*, the district court should clarify its intention to place Jarratt on probation as an adult pursuant to paragraph (d) of § 5010 by making an *express* finding that he will not derive benefit from treatment under paragraphs (b) or (c).

Apparently, both the appellant and the appellee overlooked the fact that the sentence which the judge imposed orally on Jarratt at his sentencing hearing *differs* from the sentence imposed on him in the written judgment of conviction. Neither has referred to it on appeal.

At the sentencing hearing held on March 1, 1972, the judge pronounced sentence upon Jarratt, as follows:

"THE COURT: . . . . So, Mr. Jarratt, you will be placed on probation for a period of *three* years. . . . It is a special condition of probation that you do work of national importance under the direction of the probation officers of the Northern District of California for a period of *two years.* . . ." [Emphasis supplied).
*Reporter's Transcript,* vol. 3, p. 25.

However, in the written judgment of conviction bearing the same date and signed by the judge, the sentence is indicated to be, as follows:

"It is adjudged that the imposition of sentence is hereby suspended and the defendant placed on probation for a period of *two (2) years* on condition that the defendant shall perform work of national importance for *two years."* [Emphasis supplied].
*Clerk's Record,* vol. 1, p. 23.

At the outset, it should be noted that the irregularity in the record of this case was apparently the result of a "clerical error" by either the court clerk or the reporter. In United States v. Hicks, 455 F.2d 329 (C.A.9, 1972), this court faced a similar situation involving a "clerical error" when the reporter's transcript indicated that the defendant had been sentenced orally to concurrent sentences of six years while the written judgment of conviction reflected that he had been sentenced to concurrent sentences of ten years. After noting that the irregularity existed (which, as in this case, neither the appellant nor the appellee had mentioned), the court stated that "this oral pronouncement is controlling" and it remanded the case to the district court with instructions to correct the record accordingly "as permitted by Rule 35 (sic) [should have been Rule 36]. . . ." Admittedly, in *Hicks, supra,* this court stated that the oral pronouncement controlled, but it was confronted with a situation where the oral sentence was less than the written judgment of conviction. In this case, since the situation is reversed (i. e., the written judgment is less than the oral pronouncement of sentence), a different procedure should be utilized by this court.

■ A more prudent procedure would be to remand this case to permit the dis-

---

4. H.R.Rep.No.2979, 81st Cong., 2nd Sess., 2 U.S.Code Cong.Serv., p. 3983 (1950).

5. Section 5006(e) of the Act defines a "youth offender" as "a person under the age of twenty-two years at the time of conviction."

trict court to correct the record so as to truly disclose what actually occurred. Such a procedure would be in accordance with Rule 10(e) of the Federal Rules of Appellate Procedure which states that:

"(e) *Correction or Modification of the Record.* If any difference arises as to whether the record truly discloses what occurred in the district court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated therein, the parties by stipulation, or the district court either before or after the record is transmitted to the court of appeals, or the court of appeals, on proper suggestion or of its own initiative, may direct that the omission or misstatement be corrected. . . ."

The judgment is affirmed and the cause remanded to the district court with directions to correct the record to conform to the truth.