**UNITED STATES of America**

**v.**

**Tyrone R. TOY, Appellant.**

**No. 72–1858.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 19, 1973.

Decided July 13, 1973.

Andrew S. Krulwich, Washington, D. C. (appointed by this Court), for appellant.

Kevin W. Carmody, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Broughton M. Earnest, Asst. U. S. Attys., were on the brief, for appellee. David M. Bullock, Asst. U. S. Atty., also entered an appearance for appellee.

Before FAHY, Senior Circuit Judge, WISDOM,* Circuit Judge for the Fifth Circuit, and WILKEY, Circuit Judge.

FAHY, Senior Circuit Judge:

The appeal is from convictions of appellant by a jury on three counts of armed robbery, 22 D.C.Code §§ 2901 and 3202 (Supp. V, 1972), and four counts of assault with a dangerous weapon, 22 D.C.Code § 502 (1967). These offenses all occurred in connection with a rob-

* Sitting by designation pursuant to 28 U.S.C. § 291(a).

bery of a drug store in which four men participated. Money was taken from two cash registers and from the pharmacy section. Six eye-witnesses identified appellant at the trial as one of the robbers. When convicted he was 20 years of age, eligible for sentence under the Youth Corrections Act.[1] He was sentenced under section 5010(c) of the Act to fifteen years for each count of armed robbery and ten years for each assault, the sentences to run concurrently.

Prior to trial, appellant moved to suppress the in-court identification testimony as tainted by previous photographic and lineup procedures. A majority of the court hold the motion to suppress was properly denied.[2]

## I

As to other challenges to the armed robbery convictions, now briefly considered, we are agreed in finding no reversible error. It is said the court did not adequately guide the jury in their appraisal of the identification testimony. When the instructions given are considered in the context of the evidence and arguments of counsel, it cannot reasonably be held that the verdict would have been different had the jury been more elaborately instructed as to this part of their responsibility.

It is also claimed appellant was denied the right to a speedy trial, an interval of fifteen months having elapsed between his arrest and trial. "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant," Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), are the factors which "must be considered together with such other circumstances as may be relevant." 407 U.S. at 533, 92 S.Ct at 2193. In this case, appellant was at liberty on bond, and did not seek an earlier trial until his motion directed to this issue was filed on April 28, 1972, about fourteen months after his arrest. The motion was heard and denied on May 10, 1972, and the trial began the following day. While the Government agrees that the delay was most unfortunate, it denies that the delay was intentional to gain an advantage, and assigns institutional reasons as the cause. A delay due to "negligence or overcrowded courts," 407 U.S. at 531, 92 S.Ct. 2182, is not necessarily fatal to a valid prosecution, though it is a factor to be considered.

We find no significant prejudice to appellant resulting from the delay in his case. There is no suggestion that any of his witnesses died or became unavailable. While he does claim that he was prejudiced in his alibi defense by the loss of memory on the part of himself and his mother, and also on the part of the identifying witnesses, the latter ordinarily being a disadvantage borne by the prosecution, any prejudice to appellant that may have resulted was minimal and cannot be said to have affected the outcome. The identifying testimony against him accepted by the court as admissible was strong, based as it was on his identification by six witnesses. After carefully weighing all relevant factors, we conclude that the "severe remedy of dismissal of the indictment," 407 U.S. at 522, 92 S.Ct. at 2188, is not justified.

The convictions of armed robbery accordingly are affirmed.[3] The convictions for assault with a dangerous weapon are set aside, since those

---

1. 18 U.S.C. § 5001 et seq. (1970).

2. I would remand for a determination by the trial court whether the in-court identifications could be sustained as resting upon independent sources, that is, upon the witnesses' recollection of what occurred at the time of the robbery, unimpaired by what I consider to have been such suggestive pretrial identification procedures as to have tainted the identifications made at the trial.

3. Appellant raises no objection to the number of armed robbery counts. Accordingly, we do not consider whether there should have been only one conviction for armed robbery, since all the money stolen belonged to the drug store.

charges merged with the former convictions. United States v. Benn and Hunt, 155 U.S.App.D.C. 180, 476 F.2d 1127 (1972).

## II

■ The validity of the sentences for armed robbery remains for consideration. We hold that the court in sentencing appellant under section 5010(c) of the Youth Corrections Act failed to make the finding required as a condition to such a sentence.

■ We approach this construction of section 5010(c) by considering first the related provisions of sections 5010(a) and (b). The former authorizes the court to suspend sentence of a youth offender and to place him on probation if the court is of the opinion he does not need commitment. If the court decides that probation is not warranted, the statutory plan contemplates that the court will normally sentence the youth offender under section 5010(b).[4] This section permits the court in lieu of any imprisonment otherwise provided for the offense to sentence the youth to the custody of the Attorney General for treatment and supervision under the Act until discharged as provided in section 5017(c), which provides for his release conditionally, under supervision, on or before the expiration of four years from the date of his conviction, and for his unconditional release on or before six years.

Section 5010(c), activated in appellant's case, then provides as follows:

If the court shall find that the youth offender may not be able to derive maximum benefit from treatment by the Division prior to the expiration of six years from the date of conviction it may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter for any further period that may be authorized by law for the offense or offenses of which he stands convicted or until discharged by the Division as provided in section 5017(d) of this chapter.[5]

In sentencing appellant the court first afforded him and his counsel an opportunity to address the court, of which counsel availed himself. The court also stated that he had read counsel's sentencing memorandum. Then the court simply announced the sentences, without more, as set forth in the margin.[6]

■ Had the procedure thus followed been employed in sentencing a youth offender as an adult under section 5010(d), clearly it would not have conformed with the finding requirements we have previously held necessary. United States v. Coefield, *supra,* and United States v. Waters, 141 U.S.App. D.C. 289, 437 F.2d 722 (1970). The language of section 5010(d), "If the court shall find . . . ," followed by a de-

---

4. Congress intended that the vast majority of youth offenders in need of rehabilitation would be sentenced under section 5010(b). This appears from Congressional expectation that only about 10% would not qualify for treatment under that section. Section 5010(c) was added to extend the benefits of the Act to those youth offenders who would have been otherwise sentenced as adults because of the inadequacy of the six year limitation of section 5010(b). *See* United States v. Coefield, the Appendix, 155 U.S.App.D.C. 205, at 212, 476 F.2d 1152 at 1159 (1973) (en banc). Thus the statutory plan is that youth offenders ordinarily are to be sentenced under section 5010(b) unless the court makes a 5010(c) or (d) finding, whereupon it may sentence under these latter provisions.

5. The treatment and rehabilitative functions assigned to the "Division" (the Youth Correction Division of the Parole Board) are set forth in separate provisions of the Act, including sections 5017 (c) and (d).

6. THE COURT: Count One, armed robbery, 18 U.S.C. 5010(c), 15 years; Count Four, armed robbery, 18 U.S.C. 5010(c), 15 years; Count Seven, armed robbery, 18 U.S.C. 5010(c), 15 years; sentences, of course, to run concurrently.

 On Count Three, assault with a dangerous weapon, 18 U.S.C. 5010(c), 10 years; Count Six, ADW, 18 U.S.C. 5010 (c), 10 years; Count Nine, ADW, 18 U.S.C. 5010(c), 10 years; Count Ten, ADW, 18 U.S.C. 5010(c), 10 years; all counts to run concurrent.

lineation of what the court is to find should the youth be sentenced as an adult, namely, that he will not derive benefit from treatment under either sections 5010(b) or (c), calls for an affirmative finding. United States v. Waters, *supra,* and United States v. Ward, 147 U.S.App.D.C. 149, 454 F.2d 992 (1971). Moreover, the finding is to be explicit and supported by reasons. United States v. Coefield, *supra,* and United States v. Reed and Hoston, 155 U.S.App.D.C. 198, 476 F.2d 1145 (1973) (en banc). The same language, "If the court shall find . . .," is prefatory to a sentence under section 5010(c) and, we think, likewise calls for an affirmative finding supported by reasons which justify resort to this provision.

 In addition to the language of the statute, there are several other reasons which support this conclusion. In sentencing under section 5010(b) the court need only determine whether the youth is between the ages of 18 and 22 at the time of conviction, and that the offense of which he was convicted is punishable by imprisonment. These are simply factual determinations involving no subjective judgment. Having determined that the youth is eligible, the court may sentence him under section 5010(b) without any statement of reasons.[7] In contrast, section 5010(c), like section 5010(d), requires a finding which is qualitatively different from a determination under section 5010(b). This finding embraces a conclusion of the judge reached upon weighing factors which he deems relevant, after affording "reasonable opportunity to the youth offender, if requested, to adduce evidence

bearing on the sentence to be imposed." United States v. Coefield, *supra,* 155 U.S.App.D.C. at 211, 476 F.2d at 1158. The reasons why a potentially longer sentence of a particular duration, within the broad and indefinite range of section 5010(c), is decided upon, are the bases for its justification. Hence, the finding has judicially the same qualitative nature as a decision not to utilize the Act at all, made under section 5010(d). Any difference in the degree of necessity for stating reasons to support a finding under section 5010(c) as compared with one under section 5010(d), does not obviate the necessity itself. The difference is only in the factors relevant to the different nature of the finding required in each situation. In one, the problem is whether the youth offender should be sentenced for a longer period because he may not be able to obtain the maximum benefit from treatment for the shorter period; in the other, it is whether he will not derive benefit from treatment at all.

A sentence under section 5010(c), like one under section 5010(d), has serious consequences for the youth, and represents an exception to the treatment intended by Congress to be normally accorded to a youth offender. In this case, appellant was sentenced for fifteen years, within the maximum penalty of twenty-five years authorized for armed robbery. As a consequence, he could be held in institutional confinement for a maximum of thirteen years before being conditionally released.[8] In that event his opportunity to establish a normal and productive life, including a family and a career, one of the goals of the Act,[9] is seriously imperiled. Although

7. With respect to a decision to place a youth offender on probation pursuant to section 5010(a), similarly no statement of reasons is required because " . . . the power of the court to grant probation is left undisturbed by the bill." H.R.Rep. No.2979, 81st Cong., 2d Sess. at 3 (1950) (hereinafter, H.R.Rep.No.2979).

8. 18 U.S.C. § 5017(d) which provides as follows:

(d) A youth offender committed under section 5010(c) of this chapter shall be released conditionally under super-

vision not later than two years before the expiration of the term imposed by the court. He may be discharged unconditionally at the expiration of not less than one year from the date of his conditional release. He shall be discharged unconditionally on or before the expiration of the maximum sentence imposed, computed uninterruptedly from the date of conviction.

9. H.R.Rep.No.2979, *supra,* at 3, 7, states: The problem is to provide . . . a method and means that will effect re-

this may be deemed necessary to effect rehabilitation or to protect society,[10] obviously it is fraught with grave consequences for the youth, as is a "no benefit" finding under section 5010(d). Accordingly, as in the latter case, a statement of the reasons for the court's decision is "essential to a knowledgeable administration of the Act as intended by Congress." *United States v. Coefield, supra,* 155 U.S.App.D.C. at 210, 476 F.2d at 1157. In the present case, the record reveals that the District Court was aware of the availability of the Act for sentencing appellant, but none of the other criteria enumerated in *Coefield* as essential to be considered by the sentencing judge was satisfied.

What we said in *United States v. Reed and Hoston, supra,* 155 U.S.App. D.C. at 203, 476 F.2d at 1150 bears repeating:

> The awesome and difficult task of sentencing continues to be vested in the one man who is best circumstanced to discharge it wisely, that is to say, the trial judge. The Youth Corrections Act does not change that, nor does it contemplate wholesale appellate intrusion into that process. What Congress has done, out of its urgent concern for saving the young while there is still time, is to require of the sentencing court in one limited but highly important area of sentencing the exposure on the record of the factors which informed and shaped the particular exercise of its discretion. An appellate court can only be concerned with the rationality of those

factors in relation to the Congressional objectives. Where that rationality is present and visible, its function is at an end.

### III

We have considered the contention of the United States that to decide as we do would be inconsistent with footnote 7 in *Coefield,* 155 U.S.App.D.C. at 210, 476 F.2d at 1157, which states:

> [7] Where the court sentences under the Act, without more, the possibility of challenge to the sentence is so remote that we need not now dwell upon whether more might be required in an exceptional situation we do not envisage.

This footnote supplements that part of the text of the opinion which reads:

> When, however, prior to imposing a sentence, the judge has availed himself of the assistance afforded by section 5010(e),[6] and after considering the report in light of the other data before him, follows its findings or recommendation in imposing sentence, additional reasons need not be stated, although, of course, the judge is not precluded from adding reasons of his own.[7] On the other hand when section 5010(e) is not invoked, or the judge imposes a sentence contrary to the recommendation in a report following a referral under section 5010(e), the need for more detailed statement of reasons is more obvious.

The present case may indicate that the likelihood of challenge to a sentence

---

habilitation and restore normality, rather than develop recidivists.

S.2609 [The Youth Corrections Act] is designed to provide methods and means that will effect such rehabilitation and restore normality. It is not experimental. It is based on the principles and procedures developed under what is known as the Borstal system in England, which has been in successful operation since 1894.

\* \* \* \* \*

By 1942, over 15,000 men in England, most of them married and owning their own homes, had passed through a Borstal institution.

10. Under section 5010(c) of the bill, if the maximum term which may be imposed for the offense or offenses of which the youth offender stands convicted is more than 6 years, and the sentencing judge entertains doubt as to whether rehabilitation can be accomplished within 4 years, he may impose a greater maximum sentence but not greater than that authorized by law for the offense or offenses with which the youth offender stands convicted. This affords opportunity for the sentencing court to avail itself of the provisions of this bill and at the same time insure protection of the public if efforts at rehabilitation fail.

*Id.* at 4.

under the Act is not as remote as we anticipated in *Coefield,* but, even so, the challenge having been made is to be disposed of. *Coefield* was concerned with a failure to sentence under the Act at all, and its footnote 7 is not a bar to a youth offender's right to a decision on the merits of his challenge to possible confinement for thirteen years without the criteria of section 5010(c) having been satisfied. The sentencing provisions of the Act are in a special category, encased as they are within a unique statutory plan unknown to the usual sentencing process. The elaborate structure pertaining to these provisions, with their respective standards governing their utilization, imposes a special obligation upon the courts.

The convictions of armed robbery are affirmed. Those of assault with a dangerous weapon are set aside and the sentences therefor are vacated. The sentences for armed robbery are vacated and the case is remanded for reconsideration of the sentences for those offenses consistent with this opinion.