UNITED STATES of America,
Respondent-Appellee,

v.

Douglas Raymond DORSZYNSKI,
Petitioner-Appellant.

No. 72-1434.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 16, 1973.

Decided July 20, 1973.

Certiorari Granted Dec. 10, 1973.
See 94 S.Ct. 792.

Robert H. Friebert, Milwaukee, Wis., for petitioner-appellant.

David J. Cannon, U. S. Atty., Joseph P. Stadtmueller, Asst. U. S. Atty., Milwaukee, Wis., for respondent-appellee.

Before SWYGERT, Chief Judge, DUFFY, Senior Circuit Judge, and SPRECHER, Circuit Judge.

SWYGERT, Chief Judge.

Petitioner-appellant, Douglas Raymond Dorszynski, appeals from orders of the district court revoking his probation and denying his motions for release from custody pursuant to 28 U.S.C. § 2255, to withdraw his plea of guilty, or alternatively for reduction of sentence.

The petitioner pleaded guilty on February 14, 1972 to unlawful possession of 1000 tablets of lysergic acid diethylamide (LSD) in violation of 21 U.S.C. § 844(a) and 18 U.S.C. § 2. He was sentenced to the custody of the Attorney General for a period of one year, 90 days of which were to be served in a jail-type institution. The execution of the remainder of the commitment was stayed and the petitioner was placed on probation for a period of two years following his jail sentence.

While serving his sentence, the petitioner filed a series of motions: (1) for release from custody pursuant to 28 U. S.C. § 2255, asserting that Fed.R.Crim. P. 11 was not observed because the petitioner was not advised that he was waiving his privilege against self-incrimination, that he was also not advised that he was subjecting himself to incarceration for a period of six years by entering a plea of guilty pursuant to the Federal Youth Corrections Act, 18 U.S.C. §§ 5005–5026, and that the court made no finding that the defendant would not derive benefit from treatment pursuant to 18 U.S.C. § 5010(b) or (c); (2) to withdraw his plea of guilty pursuant to Fed.R.Crim.P. 32(d), asserting that his plea was coerced and was the product of promises and inducements made to him by Acting Special Agent William W. Raebel of the Dangerous Drugs and Narcotics Division to the effect that if he cooperated with the federal authorities and entered a plea of guilty, he would receive a sentence of probation pursuant to the provisions of the Federal Youth Corrections Act; and (3) to reduce his sentence pursuant to Fed.R. Crim.P. 35. At the time of the hearing on the motions the petitioner had finished his jail sentence and was on probation.

Both Agent Raebel and the petitioner were witnesses at the hearing on the motions. The petitioner testified that Raebel had told him that he, Raebel, would ask the judge for probation of the petitioner under the Federal Youth Corrections Act.[1] Raebel denied this. The petitioner further testified that his testimony about Raebel's promise was not inconsistent with his sworn answers in response to the trial judge's questions at the time of the plea of guilty. At that time, he had answered that there were no promises, threats, or pressures to make him plead guilty and that he did not think arrangements had been made with the court as to what the penalty would be.

The trial judge indicated that he believed that the petitioner had testified falsely. He denied the motions and then requested counsel to show cause why the probation should not be terminated for lying under oath. After defense counsel argued against this action, the judge terminated the petitioner's probation and committed him to custody. This court ordered the release of the petitioner on bail pending appeal.

I

The petitioner's first contention is that the trial judge did not observe Rule 11 of the Federal Rules of Criminal Procedure by not expressly advising the petitioner that by entering a plea of guilty he was waiving his fifth amendment right not to be compelled to testify against himself. According to the petitioner, McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), and Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), require that a defendant be ad-

---

1. If the petitioner had been placed on probation under the Federal Youth Corrections Act, he would have been eligible to have the record of his conviction expunged pursuant to 18 U.S.C. § 5021 (b).

vised that, by pleading guilty, he is waiving his right against self-incrimination.

In the case before us the trial judge advised the petitioner that by pleading guilty he was waiving his rights to trial by jury and to confront the witnesses against him. The judge further advised the petitioner that he was presumed to be innocent and that the Government had the burden to prove that he was guilty beyond a reasonable doubt. The petitioner stated that he desired to waive those rights and the presumption. The judge also asked the petitioner if he had ample time to talk to his attorney and to understand what was happening. The petitioner said yes. The petitioner, a second year college student at the time of the plea and represented by counsel, has never alleged that he did not understand he was waiving his right against self-incrimination.

██ Neither *McCarthy* nor Rule 11 require a ritualistic question to a defendant asking if he understands that he is waiving his right against self-incrimination. The waiver is implicit. United States v. Webb, 433 F.2d 400, 403 (1st Cir. 1970).

### II

The petitioner's second contention is that it was improper to commit him, a nineteen year old, as an adult unless the trial judge had first determined on the record that the petitioner would not benefit from treatment under the Federal Youth Corrections Act.[2]

The petitioner admits that the Youth Corrections Act was never mentioned in sentencing and that all parties assumed the petitioner was sentenced as an adult under the Criminal Code. He argues, however, that section 5010(d) of the Act requires the district judge to make a

specific finding with reasons as to why the petitioner would not derive benefit from treatment pursuant to section 5010(b) or (c). The authority for this position is United States v. Waters, 141 U.S.App.D.C. 289, 437 F.2d 722, 725 (1970), which held that such a finding had to be explicitly or implicitly made.

██ The legislative history of the Youth Corrections Act establishes that a purpose of the Act was to make available a system for the sentencing and treating of youths to be used in the judge's discretion. *See* 1950 U.S.Code Cong. Service, p. 3983. It was designed to provide an alternative to sentencing as an adult under the Criminal Code.

 The record here supports the implication that after the petitioner's trial counsel had raised the possibility of sentencing the petitioner as a youth offender, the trial court determined that the petitioner would not derive benefit from treatment pursuant to section 5010(b) or (c). Insofar as *Waters* requires that the trial judge make an explicit finding to that effect, we decline to follow it.

### III

Lastly, the petitioner contends that the revocation of his probation violated his rights to due process of law. At the conclusion of the post-conviction evidentiary hearing, the trial judge announced that Dorszynski testified falsely that agent Raebel had promised prior to sentencing to bring to the judge's attention the availability of the Youth Corrections Act. The judge followed up this announcement by saying, "And I, therefore, believe he [the petitioner] should show cause why his probation should not be terminated." At the conclusion of comments by petitioner's counsel, the court ordered the probation terminated.

2. The petitioner has also made an argument in his brief that he admits was not raised in the district court: That he could only have been placed on probation under the Federal Youth Corrections Act; and since he was placed on proba-

tion, he must have been sentenced under the Federal Youth Corrections Act and not as an adult. This argument has no merit since petitioner was not placed on probation but received a "split" sentence in accordance with 18 U.S.C. § 3651.

■ The judge took the position that the petitioner had perjured himself in the presence of the court and that by terminating probation, he was not increasing petitioner's punishment but only reasserting the penalty originally imposed. The judge also inferred that under the circumstances no "formal proceedings" in conformity with Fed.R. Crim.P. 32(f) were required.

It is evident from the record that the judge determined that the petitioner was guilty of perjury, an offense punishable under 18 U.S.C. § 1621. Although the petitioner was not formally charged with that offense nor afforded a trial to determine his guilt, he was in a very practical sense convicted—in the mind of the judge—and punished by the revocation of his probation.

The only condition of the petitioner's probation prescribed at the time of sentence that is relevant was that he should "refrain from violation of any law [federal, state, and local]." Rule 32(f) provides that probation should be revoked only after a hearing "at which the defendant shall be present and apprised of the grounds on which such action is proposed." It is highly questionable whether the procedure by the rule was observed even in a rudimentary sense in the situation before us. But bypassing that and assuming that the petitioner did testify falsely, such conduct did not violate any of the specified conditions of his probation. Only upon being accused of and convicted of perjury in accordance with procedural due process would the petitioner have violated the condition of probation referred to above.

We appreciate the sense of outrage that the district judge apparently experienced upon becoming convinced that the petitioner had not testified truthfully. False swearing, however, not only is a serious offense, legally and morally, but also its proof must be established, if legal consequences are to result, by procedures that fully comport with due process. Although contempt was not alluded to in the instant proceedings, its analogy is readily apparent. Ex parte Hudgings, 249 U.S. 378, 39 S.Ct. 337, 63 L.Ed. 656 (1919), was a case where a witness was summarily punished for contempt after the trial judge had determined that the witness had testified falsely. In reversing the contempt decree, Chief Justice White wrote:

It is true that there are decided cases which treat perjury, without any other element, as adequate to sustain a punishment for contempt. But the mistake is, we think, evident, since it either overlooks or misconceives the essential characteristic of the obstructive tendency underlying the contempt power, or mistakenly attributes a necessarily inherent obstructive effect to false swearing. If the conception were true, it would follow that when a court entertained the opinion that a witness was testifying untruthfully the power would result to impose a punishment for contempt with the object or purposes of exacting from the witness a character of testimony which the court would deem to be truthful; and thus it would come to pass that a potentiality of oppression and wrong would result and the freedom of the citizen when called as a witness in a court would be gravely imperiled. 249 U.S. at 383–384, 39 S. Ct. at 340.

Were probation terminable upon a judge's summary determination in a post-conviction proceeding that the probationer had testified falsely, the chilling effect of such a practice upon the pursuit of post-conviction remedies is quite apparent.

While we do not wish by our decision to give countenance to those who would take their sworn testimony in court lightly, for the reasons we have stated, we are constrained to reverse the order revoking the defendant's probation. The orders denying the other motions are affirmed.

Reversed in part; affirmed in part.