**UNITED STATES of America,**
**Appellee,**

v.

**James KAYLOR, Defendant,**

**Willie Glen Hopkins, Defendant-**
**Appellant.**

**No. 1048, Docket 73-1530.**

United States Court of Appeals,
Second Circuit.

Submitted to the en banc Court
Nov. 12, 1973.

Decided Feb. 11, 1974.

Mark A. Landsman, Brooklyn, N. Y. (Lawrence Stern, New York City, of counsel), for appellant Hopkins.

Kenneth J. Kaplan, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., E. D. N. Y., L. Kevin Sheridan, Asst. U. S. Atty.), for appellee.

Before KAUFMAN, Chief Judge, and MOORE, FRIENDLY, HAYS, FEINBERG, MANSFIELD, MULLIGAN, OAKES and TIMBERS, Circuit Judges (en banc).

OAKES, Circuit Judge:

Following a divided panel opinion in this case filed October 15, 1973, rehearing en banc was ordered. The principal question presented is whether the trial court must make an affirmative *explicit* finding that a youth offender [1] will not

---

1. "Youth offender" is defined by 18 U.S.C. § 5006(e) as a person under the age of 22 years at the time of conviction.

"derive benefit from treatment" under the Federal Youth Corrections Act (Act), 18 U.S.C. § 5010(d).[2] A majority of the panel which decided this case held, in reference to appellant Hopkins, that an implicit finding was sufficient, the majority relying primarily upon Cox v. United States, 473 F.2d 334, 337 (4th Cir. 1973) (en banc), and United States v. Jarratt, 471 F.2d 226, 230 (9th Cir. 1972). The dissenting member of the panel agreed with the Court of Appeals for the District of Columbia, which held in United States v. Coefield, 155 U.S. App.D.C. 205, 476 F.2d 1152 (1973) (9–1 decision, en banc), *inter alia*, that "the finding required to be made under § 5010(d) as a condition to an adult sentence is to be explicit . . . ." *Id.* at 1158–1159.

Cases from other circuits bearing on the question have also taken different views.[3] It is not without significance that in two cases holding that an implicit finding is sufficient, there were remands to the district courts for resentencing. In Cox v. United States, 473 F.2d at 337, there was a remand because the district judge had stated explicitly that he had *not* made a "no benefit" finding since he believed that § 5010(d) provided merely another alternative for sentencing rather than stated a preferred sentencing policy. In United States v. Jarratt, *supra*, the ground for remand was a difference between the sentence imposed orally and that in the written judgment of conviction; while the court stated that the "no benefit" finding was implicit, the court nevertheless instructed the district court to "clarify" its position "by making an *express* finding." Thus both the Fourth and Ninth Circuits, while holding that

2. The treatment referred to is, under 18 U. S.C. § 5010(b), sentence "to the custody of the Attorney General for treatment and supervision" pursuant to the Act until discharged by the Youth Correction Division of the Board of Parole, or, under 18 U.S.C. § 5010(c), if the court finds that the youth offender may not be able to derive maximum benefit from treatment by the Youth Correction Division prior to the expiration of six years from the date of conviction, sentence may be to the custody of the Attorney General for treatment and supervision for any further period that may be authorized by law for the offense or offenses committed, or until discharge by the Youth Correction Division of the Board of Parole.

3. In United States v. Dorszynski, 484 F.2d 849 (7th Cir.), cert. granted, 414 U.S. 1091, 94 S.Ct. 721, 38 L.Ed.2d 548 (1973), a panel of the Seventh Circuit rather summarily rejected the appellant's claim that § 5010(d) required both an explicit finding of "no benefit" and a statement of reasons for that decision. *Id.* at 851. The *Dorszynski* panel made no reference to United States v. Coefield, 155 U.S.App.D.C. 205, 476 F.2d 1152 (1973), decided more than five months prior to its decision, or to Cox v. United States, 473 F.2d 334 (4th Cir. 1973), decided almost five months prior to its decision. The *Dorszynski* panel's cryptic reference to the legislative history of § 5010(d) and its treatment of that history gives no consideration to whether, as concluded by both the *Coefield* and *Cox* en banc decisions, § 5010(d) created a *preferred* sentencing alternative. In United States v. Walker, 469 F.2d 1377 (1st Cir. 1972), the First Circuit rejected an argument that an express finding of "no benefit" was necessary because the defendant, having been convicted of failure to register for the draft, demonstrated no "antisocial tendency" for which the treatment provided under 18 U.S. C. § 5006 was designed. *Id.* at 1381 n. 4. In United States v. Bamberger, 456 F.2d 1119 (3d Cir. 1973), a Third Circuit panel rejected an argument that the district court had erred in not making an affirmative finding of "no benefit" under § 5010(d), *id.* at 1128–1129 n. 7, stating: "We hold that the court did not err *in imposing a sentence* in excess of six years on [appellant] who fired into the windshield of a pursuing police cruiser . . . ." *Id.* (emphasis added). *See also* Williams v. United States, 476 F.2d 970 (3d Cir. 1973). Of course, whether the district court erred as to the § 5010(d) finding is not the same question as whether the sentence finally imposed was correct in a given case, *see* part IV *infra*.

On the other hand, in Rogers v. United States, 326 F.2d 56 (10th Cir. 1963), the Tenth Circuit remanded for resentencing on the basis that either the judgment of commitment or the record of the proceedings below must show affirmatively that the sentencing judge found that the defendant's crime was punishable by imprisonment under § 5010(b). *Cf.* DeWitt v. United States, 383 F.2d 542 (5th Cir. 1967).

an implicit finding is sufficient, remanded for explicit findings.[4]

## I.

Congress had long had separate treatment for juveniles, that is to say, those who have not attained their 18th birthdays, in connection with juvenile delinquency, defined as a violation of federal law committed by a juvenile and not punishable by death or life imprisonment. 18 U.S.C. § 5031. However, in 1950 a corrections program was specifically developed for youths committing federal crimes during the age between adolescence and maturity. *See* H.R. Rep.No.2979, 81st Cong., 2d Sess. 1 (1950) (hereinafter cited as H.R.Rep.), U.S.Code Cong. Serv. p. 3983. Irrespective of its sociological or criminological validity today, Congress adopted in specific terms the concept of rehabilitation as opposed to retribution, in the handling of youth offenders. As has been pointed out, "Congress was responding in part to the findings by psychologists and sociologists that there were 'special causations' of antisocial tendencies in adolescents . . . ," Note, *supra* note 4, at 1077, supposedly disappearing when the youth reaches the age of maturity. Thus the Act constitutes recognition that incarceration of young offenders in adult prisons may indeed encourage criminality rather than work to prevent it. *See* H.R.Rep. at 2–3, U.S.Code Cong. Serv. p. 3985.

The Act, as pointed out by Judge Fahy in *Coefield*, 476 F.2d at 1156, was undoubtedly the most comprehensive federal statute involving sentencing. It established the Youth Correction Division within the United States Board of Parole to administer the Act. 18 U.S.C. § 5005. It authorized the construction of "institutions of maximum security, medium security, or minimum security types, including training schools, hospitals, farms, forestry and other camps, and other agencies that will provide the essential varieties of treatment." 18 U.S.C. § 5011. The Act requires the use of such institutions and agencies as far as practicable "only for treatment of committed youth offenders" and calls for segregation of them from other offenders and segregation of committed youth offenders into classes according to their needs for treatment. *Id*. The underlying premise of the Act —even though the concept is being subjected to question in the present era by some psychologists and sociologists—is that a system of rehabilitative treatment may permit youth offenders to become "useful citizens." H.R.Rep. at 1, U.S. Code Cong. Serv. p. 3983.

While the Youth Corrections Act gives a judge the opportunity to sentence a youth offender other than to prison or to place him on probation, it clearly appears that Congress, while carefully preserving judicial discretion, nevertheless *favored* treatment of youth offenders under the Act, i. e., by way of rehabilitation. United States v. Coefield, 476 F.2d at 1157; Cox v. United States, 473 F.2d at 337. *See* United States v. Waters, 141 U.S.App.D.C. 289, 437 F.2d 722, 724–725 (1970). As the Fifth Circuit said in Cunningham v. United States, 256 F.2d 467, 472 (1958), the provisions of the Act "are designed, enacted and enforced with that end in view."

The language of the Act itself supports this basic proposition. Paragraph (d) of § 5010 says, "If the court shall find that the youth offender will not derive benefit from treatment [under the Act] then the court may sentence the youth offender under any other applicable penalty provision." Congress was very careful not to say that "if the court shall find that the youth offender will derive benefit from treatment [under the Act] then the court may sentence him thereunder." Congress specifically provided in § 5010(e)

---

4. The various cases, other than *Dorszynski, supra*, have been the subject of a recent note, Sentencing Under the Federal Youth Corrections Act: The Need for an Explicit Finding and a Statement of Reasons, 53 B. U.L.Rev. 1071 (1973).

for temporary commitment for observation and study at an appropriate classification center or agency, which would tend to indicate that treatment under the Act was favored. Indeed, subsection (c) treatment, providing for longer confinement and supervision than subsection (b) treatment is, in and of itself, a recognition that some youthful offenders would need more intense rehabilitative treatment than others. *See* United States v. Coefield, 476 F.2d at 1160. And of course, all levels of security were provided for as mentioned above, § 5011, and various types of institutions and agencies were established or to be utilized for services under the Act. Nowhere is there any indication that the type of crime committed, elements of immorality or violence involved therein, or related factors are to be considered per se to require denial of treatment under the Act,[5] even though Congress knew exactly how to do this both in the Juvenile Delinquency Act, 18 U.S.C. § 5032, and in the Narcotics Addiction Rehabilitation Act, 18 U.S.C. § 4251(f), recently upheld in Marshall v. United States, 414 U.S. 417, 94 S.Ct. 700, 38 L. Ed.2d 618 (1974).

Further developing the congressional scheme, it is readily apparent that there is a direct contrast between youth offenders under the Youth Corrections Act —such as appellant Hopkins—and "young adult offenders" under 18 U.S.C. § 4209, where Congress, after specifically requiring consideration of the previous record of the defendant, his social background, capabilities, mental and physical health and the like, permits the court to impose sentence under the Youth Corrections Act only "if . . . the court finds that there is reasonable grounds to believe that the defendant will benefit from [that] treatment. . . ." Quite evidently Congress intended to prefer treatment under the Youth Corrections Act for *youth offend-*

ers, while it meant to permit such treatment only after affirmative findings in the case of *young adult offenders.* *See* United States v. Waters, 437 F.2d at 724. The overall congressional purpose, to provide treatment under the Act for youth offenders, as expressed in the language of the Act as well as its legislative history, guides our answer to the basic question whether a "no benefit" finding may be implicit or explicit.

## II.

It is true, as the majority of the panel in this case considered, that the sentencing process is a complicated one and that the requirement of an explicit finding adds one more burden to the overall awesome task of the trial judge, particularly if coupled with a requirement that the reasons underlying its conclusion be set forth.[6] At the same time, there is obviously considerable difficulty in ascertaining what is an implicit finding, a difficulty that in a day and age of a burgeoning appellate case load, *see* H. Friendly, Federal Jurisdiction: A General View 15–54 (1973), will lead to considerable appellate litigation. This cuts both ways because appeals of little or no merit will be filed while, as the Boston University Law Review note points out, meritorious claims may not be appealed.[7] Indeed if one were to accept implicit findings at all, it is difficult to escape Judge MacKinnon's logic, expressed in his dissent in United States v. Coefield, 476 F.2d at 1162, that the imposition of an adult sentence "necessarily involves a finding of no benefit under the Act." Short of such a position, which would render the requirement of a finding by virtue of § 5010(d) nugatory, there will be the greatest of room for difference of opinion as to whether such a finding is to be implied. Indeed, Judge Rosling, in sentencing appellant Hopkins, stated before verdict that he "always take[s]" youth offender eligibility "into consider-

---

5. *But see* United States v. Bamberger, 456 F.2d at 1128–1129 n. 7.

6. Discussed in part IV *infra.*

7. Note, *supra* note 4, at 1082–83.

ation when sentence is to be imposed," and in the sentencing minutes in the course of which appellant Hopkins' counsel referred to the Youth Corrections Act, the judge said, "In imposing sentence, which is not a light one, I have taken into account the fact that you were quite young at the time you committed the crime." It is the very proposition that an adult sentence is in and of itself an implicit finding of no benefit that we suspect prompted the *Cox* and *Jarratt* courts to remand for explicit findings; while holding that an implicit finding was enough, these courts were not sure whether the findings below were sufficiently implicit.

█ We are unanimously of the view, then, that the language of the Act, its intent and purpose, coupled with the practical consequences of any decision otherwise, require a construction that a finding of no benefit under § 5010(d), whether requested or not, be made explicit in the record, preferably at the time of imposing sentence.

### III.

Before reaching the question of whether reasons must be stated, and to what extent, so as to make the explicit finding of no benefit subject to some measure of judicial review, we note an important qualification on our finding above.

██ This is as to its prospective application. While, as will be seen, we reverse in Hopkins' case and remand for resentencing, we are aware that doubtless a great many sentences have been imposed on youthful offenders without explicit findings of no benefit. To be sure, these are not based upon any court of appeals decision, but absent one the rule of law has been thought by some of the district judges not to require explicit findings. There is a long line of constitutional law cases applying decisions changing a previous rule of law prospectively only, extending from Linkletter v. Walker, 381 U.S. 618, 622–629, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) (applying

Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) prospectively), to Gosa v. Mayden, 413 U.S. 665, 672–678, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973) (four Justices applying O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969) prospectively).

In determining the issue of retroactivity the Court has referred to a three-prong test, inquiring into (1) the purpose of the new rule of law enunciated, (2) reliance by the courts or authorities on the old rule, and (3) the effect of retroactive application on the system of administration of justice. The very same analytical elements have also been utilized in a non-constitutional law context and indeed in sentencing matters, particularly in reference to decisions enunciating new interpretations of Fed. R.Crim.P. 11, both by the Supreme Court, *e. g.*, Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969) (applying McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) prospectively), and by your own court, *e. g.*, Korenfeld v. United States, 451 F.2d 770 (2d Cir. 1971) (2–1 decision) (applying Bye v. United States, 435 F.2d 177 (2d Cir., 1970) prospectively). The purpose of the rule we enunciate today is clear enough: to make certain that in sentencing a trial judge has considered and rejected the preferred alternative of treatment under the Act as to the individual youthful offender. We accomplish this purpose by requiring explicit findings in every case. We have no doubt, however, that in case after case this alternative has been considered, and rejected, by our conscientious district judges even though their findings of no benefit have been implicit only, as here. And we have great concern lest our burdened federal court system be flooded with new motions to vacate sentences or, indeed, to reopen judgments in which the sentences have long since been served, were we to apply this decision retroactively. Weighing the three considerations together, we de-

cline to make our ruling retroactive and enunciate this decision as prospective only.[8]

### IV.

█ █ The question whether the trial court must state reasons in connection with its findings of no benefit, while arguably somewhat more difficult, is nevertheless answered largely by the legislative history and on essentially the same basis that the explicit-implicit question was resolved. The District of Columbia Court of Appeals in United States v. Coefield, 476 F.2d at 1157–1158, held that, if the special provisions of the Act are not being utilized and the youth offender is sentenced as an adult, a statement of reasons by the sentencing judge is "essential to a knowledgable administration of the Act as intended by Congress."[9] We would join the District of Columbia court in saying that when a judge has availed himself of the assistance afforded by § 5010(e), that is to say, where he has ordered the youth offender committed to the custody of the Attorney General for observation and study at an appropriate classification center or agency and the Division has made its report to the court, and after considering the report has followed its findings or recommendation in imposing sentence, additional reasons are not required to be stated, although, of course,

the judge is not prevented from stating his own reasons. On the other hand, where § 5010(e) is not invoked, or where the recommendation in the report of the Division thereunder is not followed, the need for a more detailed statement of reasons is obvious. We hold also that, while no prescribed formula or litany for such a statement is called for, the district judge should mention not only his own awareness that the Act is applicable to the case; he should indicate that he has been informed of the pertinent facts relating to the individual defendant, either by way of evidence at the trial, a presentence report or otherwise; and he should indicate that he has "given consideration and related the facts of the individual case to the applicable law." United States v. Coefield, *supra*. We think that this basic result is called for by the Act for reasons that we will indicate below. We would add a further caution, however, that by this we by no means intend to suggest that in sentencing other types of offenders a statement of reasons is required, however helpful it may be.[10]

█ It may be said that in general a criminal sentence may call for consideration of a number of different objectives, including deterrence, retribution, rehabilitation and protection of the public, to mention only a few. Each sentence is based to a greater or lesser

8. This decision is inapplicable to any cases in which judgment has become final and no appeal is presently pending.

9. As an appellate court, our responsibility for the "administration" of the Youth Corrections Act is limited to our supervision of the district court judges in this circuit who are primarily tasked with implementing that Act. Our tendency is to agree, based on our reading of the legislative history of the Act, with the District of Columbia Circuit's observation, United States v. Waters, 437 F.2d at 724, later reaffirmed by that court en banc, United States v. Coefield, 476 F.2d at 1157, that cases where the district court should decide not to sentence under the Act will most probably be the exception rather than the rule. While statistics can be of dubious value, figures complied in this circuit for fiscal year 1973 indicate that only 62.7 per cent of those eligible for sentencing

under § 5010 were in fact sentenced under that section. We need not discern whether the states within our circuit tend to produce youthful offenders of the "incorrigible" type that concerned Congress, S.Rep.No.1180, 81st Cong., 1st Sess. 5 (1949), in greater numbers than Congress might have anticipated. Our function is, rather, to ensure that the statistics do not reflect a failure by district judges in this circuit to consider the full range of options open to them, e. g., United States v. Matusewitch, 481 F.2d 174, 175 (2d Cir. 1973), as well as to ensure that the congressional preference for sentencing under § 5010 is honored.

10. ABA Project on Standards for Criminal Justice, Standards Relating to Appellate Review of Sentences 2 (Approved Draft 1968). *See, e. g.,* United States v. Brown, 479 F.2d 1170, 1172–1173 (2d Cir. 1973).

extent on one or more of these factors, and the mix is ultimately to be based upon an examination of the individual's case rather than a "fixed sentencing policy based on the category of crime," for example, or some other uniform or mechanical sentencing policy. *See* generally United States v. Baker, 487 F.2d 360 (2d Cir. 1973). In sentencing under the Youth Corrections Act, however, a court necessarily must face up to the proposition above set forth that Congress has indicated a clear preference for the objective of rehabilitation both in the legislative history of the Act and in the statutory language that is utilized. Indeed, sentencing under § 5010(d) is conditioned on a prerequisite finding of fact and absent such a finding—that of "no benefit"—sentencing thereunder is improper. There is no rational way in which we can determine whether such a finding is adequately supported in the absence of a statement of the reasons underlying it as an ultimate finding. *See* K. Davis, *supra*, §§ 16.03–.04, 16.-09–.10.

We are talking, therefore, in only one very limited but nevertheless congressionally significant area of sentencing, and we do not hereby propose even in this field unlimited appellate review. Rather, as the District of Columbia Circuit also held in a companion case to *Coefield*, United States v. Reed, 155 U.S.App.D.C. 198, 476 F.2d 1145, 1150 (1973), "An appellate court can only be concerned with the rationality of [the] factors [which informed and shaped the particular exercise of the trial court's discretion] in relation to the congressional objectives." We take the view, as did the *Reed* court, that "where that rationality is present and visible" the appellate court function is at an end.[11] Certainly this decision is not inconsistent with, even though it is more limited than, the views of the ABA Project on Standards for Criminal Justices, Standards Relating to Appellate Review of Sentences at 2–3 (Approved Draft 1968):

> It is hardly commanding of public respect for our system on the one hand to increase the alternatives of the sentencing judge so that he can shape his sentence to fit each case, and on the other hand to take the position that he need not explain why he selects a particular sentence.

Beyond this, a statement of reasons has direct beneficial effects at the district court level in terms of—in and of itself —contributing to rational decision making and focusing consideration on the question of benefit of treatment under the Act. Note, *supra* note 4, at 1083. There are those, Judge MacKinnon of the District of Columbia Circuit is one, who fear that the requirement of a statement of reasons would put the district court "in an administrative straitjacket." *See* United States v. Coefield, 476 F.2d at 1163 (MacKinnon, J., dissenting). But we are not saying that by being required to make such a statement the district judge thereby in any way loses his overall discretion and responsibility for making the required determination, which may well be negative, under the Act. For a district judge's determination to be overturned would require detection of some error of law or some plainly arbitrary, irrational or unsound determination. As to our power to require such a statement, the weight of the Fourth Circuit in Cox v. United States, 473 F.2d at 337, is with the District of Columbia Circuit, 476 F. 2d at 1157, and ourselves on this point. *Cf.* SEC v. Chenery Corp., 318 U.S. 80, 94, 63 S.Ct. 454, 87 L.Ed. 626 (1943).

▮▮▮ In the past we have made it very clear that even in non-youth offender cases a district court must reconsider its sentence when it appears that the court may have considered improper

---

11. *See also* United States v. Forrest, 157 U. S.App.D.C. 188, 482 F.2d 777 (1973); United States v. Toy, 157 U.S.App.D.C. 152, 482 F.2d 741 (1973); United States v. Riley, 157 U.S.App.D.C. 27, 481 F.2d 1127 (1973); United States v. Butler, 156 U.S.App.D.C. 356, 481 F.2d 531 (1973).

factors. McGee v. United States, 462 F.2d 243 (2d Cir. 1972). We have also made it clear that a failure to exercise discretion with respect to disclosure of presentence reports on the part of the district court is reviewable. *See* United States v. Brown, 470 F.2d 285 (2d Cir. 1973). Any number of other circuits have similarly vacated sentences when imposed for arbitrary reasons or where discretion has either not been exercised, United States v. Wilson, 450 F.2d 495 (4th Cir. 1971); United States v. Daniels, 446 F.2d 967, 971–972 (6th Cir. 1971), or where it has been improperly exercised. *E. g.,* Woosley v. United States, 478 F.2d 139, 147 (8th Cir. 1973) (en banc). To do less in the context of the sentencing of youth offenders or to require anything less than a statement of the underpinning beneath the explicit finding would be neglecting our solemn obligation to carry out the congressional mandate expressed in the Act itself and in its legislative history above recounted.

Judgment reversed and cause remanded for resentencing of Willie Glen Hopkins.